1999 SD 1

Robert CHORD, Plaintiff and Appellant,

v.

Chance REYNOLDS, and Chance Reynolds d/b/a Beaver Creek Ranch, Defendant,

and

Continental Insurance Company, Defendant and Appellee.

No. 20525.

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1998.

Decided Jan. 6, 1999.

Larry M. Von Wald of Truhe, Beardsley, Jensen, Helmers and Von Wald Rapid City, for plaintiff and appellant.

Mark W. Haigh and Melissa C. Hinton of Davenport, Evans, Hurwitz & Smith Sioux Falls, for defendant and appellee.

GILBERTSON, Justice.

[¶ 1.] Robert Chord (Chord) filed this negligence action against Chance Reynolds (Reynolds), Chance Reynolds d/b/a Beaver Creek Ranch (Beaver Creek Ranch) and their insurer Continental Insurance Company (Continental) for injuries he received while working at Beaver Creek Ranch. The circuit court, Seventh Judicial Circuit, Pennington County, granted Continental's motion for summary judgment. Chord appeals. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Reynolds owned and operated a ranch called Beaver Creek Ranch in Western South Dakota. The ranch covers over 80,000 acres and is located in several South Dakota counties. Reynolds' home was located on the ranch. In 1995, the United States brought federal charges against Reynolds for False Statements to a Financial Institution and Illegal Monetary Transactions.[1] When federal charges were brought against him his agricultural empire collapsed. By January 1998, he was in the Pennington County Jail awaiting sentencing.

[¶ 3.] Chord grew up on a ranch near White Owl, South Dakota. While growing up, he helped his father with the ranch and worked part-time as a ranch hand. Chord has spent his adult years employed in either ranching or construction. Around July 1995, Chord's brother Clayton, who was the foreman for the Beaver Creek Ranch, approached him about working for Reynolds. Clayton claimed that the ranch needed some "good help." Chord considered it since he was looking for a place to work that would provide benefits and be closer to school for his two young daughters.

[¶ 4.] In October 1995, Chord was hired as "day help" for the Beaver Creek Ranch. Chord began working under his brother, Clayton. Chord earned $80.00 a day with no benefits. His hours of employment were typically 5:00 or 5:30 a.m. until the work was done. His duties consisted of caring for cattle, fencing and monitoring and maintaining the ranch.

[¶ 5.] On December 15, 1995, Reynolds placed Chord in a permanent position. He changed his pay to $2,080.00 a month, told

---

1. Reynolds had submitted false financial information to obtain a loan in the amount of $1,800,- 000.00. He was also involved in a check kiting scheme.

him he would have medical insurance,[2] a house to live in, beef and the use of the ranch to graze his cattle. His job title was "sub-foreman." Reynolds described Chord's duties as varying depending on the work that needed to be done at the ranch.

[¶ 6.] On December 30, 1995, Chord was involved in an accident and severely injured. The events that led to the injury are unknown. All that Chord can recall is riding his horse into the southwest part of the ranch containing numerous prairie dog holes looking "for a cow to doctor." The next thing he remembered was waking up in a hospital in Casper, Wyoming. He had been in a coma for many days. Chord believes that he was thrown when his horse stepped into a prairie dog hole. Chord sustained serious head injuries that resulted in temporary paralysis of the right side, amnesia, seizures, numbness and tingling in his right side, personality changes, short-term memory problems, an inability to concentrate, constant pain and loss of counting, spelling and walking skills.

[¶ 7.] Months after the accident Chord attempted to return to work at Beaver Creek. His attempt to regain the skills required of the job was unsuccessful due to his injuries. He lost his job at Beaver Creek after Reynolds was charged by the federal government.

[¶ 8.] Continental provided Reynolds and Beaver Creek Ranch with an "RFD Catastrophe Liability Coverage" insurance policy. The policy provided coverage for certain injuries and property damage. The policy excluded coverage of bodily injury sustained by any employee other than a "residence employee." Therefore, Chord would only be covered under the policy if he were a "residence employee."

[¶ 9.] Chord brought suit against Reynolds, Beaver Creek Ranch and Continental. The claim against Continental is based on SDCL 58–20–12.[3] There was no dispute that Chord

was an employee of Reynolds at the time of his injury. The only dispute is whether Chord is the type of employee covered by the insurance policy. Continental filed a motion for summary judgment. The trial court granted the motion. Chord appeals raising the following issue:

Whether the trial court erred in its grant of Continental's motion for summary judgment.

## STANDARD OF REVIEW

[¶ 10.] Our standard of review of a trial court's grant of a motion for summary judgment is well settled. As we recently stated in Estate of Shuck v. Perkins County:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. Bego v. Gordon, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. Morgan v. Baldwin, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. Wilson v. Great N. Ry. Co., 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1998 SD 32, ¶ 6, 577 N.W.2d 584, 588 (citations omitted).

[¶ 11.] The construction of a contract is a question of law that we review de novo. Ward v. Midcom, Inc., 1998 SD 10, ¶ 9, 575 N.W.2d 233, 236 (citing Schleuter Co., Inc. v. Sevigny, 1997 SD 68, ¶ 15, 564 N.W.2d 309,

2. Chord claims he was under the assumption that he did have medical insurance through the ranch. It was after the accident he realized he had no coverage.

3. SDCL 58–20–12 provides:
   Every policy written insuring against the liability of employers for personal injures ... shall

contain provisions to the effect that the insurer shall be directly liable to the injured party.... Such injured party ... in his suit against the insured, may join the insurer as a defendant, in which case judgment shall bind either or both the insured and the insurer....

313 (citing *Alverson v. Northwestern Nat'l Cas. Co.,* 1997 SD 9, ¶ 5, 559 N.W.2d 234, 235)).

## ANALYSIS AND DECISION

**[¶ 12.] Whether the trial court erred in its grant of Continental's motion for summary judgment.**

[¶ 13.] This case rests on the application of certain terms in an insurance contact to the undisputed facts. As construction of a written contract is a question of law we are free to read the contract de novo. *Olson v. United States Fidelity and Guar. Co.,* 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200. As we do not have the benefit of the trial court's reasoning for the grant of summary judgment, we will assume, from the information provided by the parties on brief, that summary judgment was granted because the trial court determined Chord was not a "residence employee" and therefore was excluded from the policy's coverage.[4]

[¶ 14.] We have developed special rules of construction that apply when interpreting an insurance policy. *Id.*

> Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation.... This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

*Id.*

[¶ 15.] In order for the rule of liberal construction to apply to the insurance contract the language in the contract must be ambiguous and susceptible to one or more interpretations. *Id.* Ambiguity in an insurance policy is determined by reviewing "the policy as a whole and plain meaning and

effect of its words." *American Family Mut. Ins. Co. v. Elliot,* 523 N.W.2d 100, 102 (S.D. 1994). Chord claims the insurance contract is ambiguous and should be construed strictly against the insurer.

[¶ 16.] We find, after reading the policy as a whole, the language is not ambiguous. We would be hesitant to apply the rule of liberal construction when the party urging a particular construction is not a party to the contract. *See St. Paul Fire and Marine Ins. Co. v. Schilling,* 520 N.W.2d 884, 889 (S.D. 1994). The only issue remaining is whether Chord falls under the definition of a "residence employee" or a "farm employee."

[¶ 17.] The policy that Continental provided Reynolds' clearly excludes coverage for:

> "Bodily injury" sustained by
>
> (1) Any employee (other than a "residence employee") as a result of his or her employment by the "insured."

In an attempt to avoid the policy exclusion, Chord asserts he meets the definition of "residence employee." The definition under the policy provides:

> "Residence employee" means an "insured's employee who performs duties in connection with the maintenance or use of the 'residence premises,' including household or domestic service, or who performs duties elsewhere of a similar nature not in connection with the 'business' of any 'insured.'"

Chord asserts that he is a residence employee because he performed duties in connection with the maintenance or use of Reynolds' residence premises. Chord further asserts that since Reynolds lived at Beaver Creek Ranch, where Chord worked, he was a "residence employee." Chord also points out that he cared for Reynolds' dogs and personal horses while he was on vacation for a few days.

[¶ 18.] Continental claims that Chord is not a "residence employee" but instead a "farm employee." A "farm employee" is defined as:

---

4. The record only provides us with Chord's deposition, Reynolds' deposition and the case file. There is no transcript of the motion hearing.

There is only an order granting summary judgment.

any "insured's" employee whose duties are principally in connection with the maintenance or use of the "insured location" as a farm. These duties include the maintenance or use of the "insured's" farm equipment.

Since Chord performed duties in connection with the farm, such as feeding, doctoring and caring for cattle, Continental claims he can only be a "farm employee." Continental also notes that under the insurance policy that "farm employee" cannot also be a "residence employee." Therefore, Chord argues that he can only be one type of employee.

[¶ 19.] We find Chord's argument to be without merit. His deposition clearly points out that he was a ranch hand who performed duties such as vaccinating cows, doctoring cows, roping cows and fencing.

Q: The work that you did on the ranch was basically what needed to be done to take care of the cattle, is that a good description of what you did?

A: Yes.

Q: So fixing fences, feeding, doctoring, things like that?

A: Yes.

Q: Is there anything you did that was not part of regular ranch work as part of your job there?

A: Not that I recall, no.

Q: I asked Mr. Reynolds—you didn't like vacuum the house or wash the dishes or anything like that, did you?

A: No. The only thing I did of that nature was let his dogs outs [sic] of the house and water his horses.

Q: That was when he was out of town?

A: Yeah. But I watered the horses—I went down and watered the horses because none of the other hands you could trust. Like he said, he couldn't trust them to do it right.

In his deposition, Chord claims his responsibilities on the ranch were that of a ranch hand, which would place him under the definition of "farm employee." Chord is bound by his testimony. "It is settled law in this jurisdiction that a party cannot claim benefit of a version of the facts more favorable to his contentions than he gave in his own sworn testimony." *Kieser v. Southeast Properties,* 1997 SD 87, ¶ 24, 566 N.W.2d 833, 839 (citing *Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 699 (S.D.1993)).

[¶ 20.] We have said before that insurance policies must be subject to a reasonable interpretation and not one that amounts to the contrary. *Olson,* 1996 SD 66 at ¶ 6, 549 N.W.2d at 200. Based on his own testimony, Chord is quite clearly a "farm employee."

[¶ 21.] The moving party, Continental, did show an absence of a genuine issue of material fact. *See Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989). Chord was a farm employee not a residence employee under the insurance contract definitions. We affirm.

[¶ 22.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

