#25667-rev & rem-JKM

**2011 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ZOO PROPERTIES, LLP and
ABERDEEN ZOO, INC.
d/b/a THE ZOO,                                    Plaintiffs and Appellants,

v.

MIDWEST FAMILY MUTUAL
INSURANCE COMPANY,                      Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JACK R. VON WALD
Judge

\* \* \* \*

THOMAS P. TONNER of
Tonner, Tobin and King, LLP                    Attorneys for plaintiffs
Aberdeen, South Dakota                          and appellants.

ERIC R. JOHNSON of
Davenport, Evans, Hurwitz &
  Smith, LLP                                          Attorneys for defendant
Sioux Falls, South Dakota                       and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 10, 2011

OPINION FILED **03/23/11**

#25667

MEIERHENRY, Justice

[¶1.]     Zoo Properties, LLP and Aberdeen Zoo, Inc. (Zoo Properties) filed a claim under its business owner's insurance policy to cover the expenses to fix a sagging ceiling resulting from cracked joists.  A provision in the policy covered damage due to "risks of direct physical loss involving collapse of a building."  The policy provider, Midwest Family Mutual Insurance Co. (Midwest Family Mutual), denied coverage claiming that the policy language only covered total collapse of the building.  The parties filed cross motions for summary judgment.  The circuit court determined that the policy did not provide coverage.  As a result, the circuit court granted summary judgment for Midwest Family Mutual.  Zoo Properties appeals, arguing that the policy provides coverage.  We reverse and remand for further proceedings.

**Facts**

[¶2.]     In March 2009, Zoo Properties became aware that the ceiling joists between the first and second floors of its building were cracked.  Zoo Properties submitted a claim to Midwest Family Mutual under its business owner's policy to pay for the repair costs.  Both parties hired engineers to determine the extent of the damage.  The engineers found that the joists were cracked but that the second floor had not collapsed to the ground.  One engineer, however, stated that collapse was inevitable and that the building would be unsafe without repair.

[¶3.]     Midwest Family Mutual denied Zoo Properties' claim on the basis that the policy was unambiguous and only covered total collapse of the building.  The policy provided coverage for "collapse" as follows:

-1-

### d. Collapse

> We will pay for loss or damage caused by or resulting from *risks of direct physical loss involving collapse* of a building or any part of a building caused only by one or more of the following:
> . . .
>> (4) Weight of people or personal property;
>> (5) Weight of rain that collects on a roof;
> . . .
> Collapse does not include settling, *cracking*, shrinkage, bulging or expansion.

(Emphasis added.) The term "collapse" was not otherwise defined.

[¶4.] The circuit court agreed with Midwest Family Mutual and determined that the policy only covered total collapse of the building, not cracking joists. On appeal, Zoo Properties argues that the circuit court's interpretation of the policy is incorrect. Zoo Properties claims that the provision is ambiguous and should be construed to cover the cracking joists because they would have eventually caused the ceiling to collapse.

### Analysis

[¶5.] It is settled that we review the interpretation of insurance contracts de novo. *Zochert v. Nat'l Farmers Union Prop. & Cas. Co.*, 1998 S.D. 34, ¶ 5, 576 N.W.2d 531, 532 (citation omitted). "We have developed special rules of construction that apply when interpreting an insurance policy." *Chord v. Reynolds*, 1999 S.D. 1, ¶ 14, 587 N.W.2d 729, 732 (citation omitted). If an insurance policy's provisions are fairly susceptible to more than one interpretation, we apply the "rule of liberal construction in favor of the insured and strictly against the insurer[.]" *Id.* If the "rules of interpretation leave a genuine uncertainty as to which of two or

more meanings is correct," the policy is ambiguous. *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235 (citations omitted).

[¶6.]     Zoo Properties argues that the term "collapse" is ambiguous. As support, Zoo Properties points to other jurisdictions that have interpreted the exact policy provision at issue here. Zoo Properties asserts that the "majority view recognizes that the definition of collapse does not require the structure to fall to the ground." Instead, Zoo Properties submits that the policy's collapse provision is satisfied when there is a "substantial impairment of the structural integrity of the building[.]" Consequently, Zoo Properties contends that an issue of material fact exists whether the building suffered a "substantial impairment" from the cracked joists.

[¶7.]     In response, Midwest Family Mutual argues that the plain language of the insurance contract must be read to define "the verb 'collapse'" as: "1) to break down completely: fall apart in confused disorganization: crumble into insignificance or nothingness; 2) to fall or shrink together abruptly and completely: fall into a jumbled or flattened mass through the force of external pressure: fall in; 3) to cave in, fall in or give way: undergo ruin or destruction by or as if by falling down: become dispersed. . . ." *Collapse Definition*, Merriam-Webster's Third New International Dictionary Unabridged, http://www.mwu.eb.com/mwu (last visited Feb. 7, 2011). In applying these definitions, Midwest Family Mutual contends that it is undisputed that the cracked joists did not lead to collapse because the ceiling never fell, rather it merely sagged. Midwest Family Mutual also argues that the

policy provision that excludes "cracking" applies to the cracked joists and precludes coverage.

[¶8.]     As noted by Zoo Properties, other jurisdictions have found the exact policy language at issue here ambiguous.  In *Ocean Winds Council of Co-owners, Inc. v. Auto-Owner Insurance Co.*, the South Carolina Supreme Court accepted a certified question to "interpret a property insurance policy providing coverage for 'risks of direct physical loss involving collapse of a building or any part of a building.'"  565 S.E.2d 306, 307 (S.C. 2002).  Like this case, the insurance policy in *Ocean Winds* also included the exclusionary language that "[c]ollapse does not include settling, cracking, shrinkage, bulging, or expansion."  *Id.*  In analyzing this policy language, the court noted that "the word 'collapse' as used in property loss insurance policies has spawned much litigation."  *Id.* (citing *What Constitutes "Collapse" of a Building Within Coverage of Property Insurance Policy*, 71 A.L.R.3d 1072 (1976)).

[¶9.]     The *Ocean Winds* court recognized that the "modern trend is to find the word 'collapse' ambiguous[.]"  *Id.*  The court also noted that the "courts finding the word [collapse] unambiguous . . . have generally construed it to mean 'a falling in, loss of shape, or reduction to flattened form or rubble.'"  *Id.* at 307-08 (citing *Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220 (D. Utah 1996); *Fantis Foods, Inc. v. N. River Ins. Co.*, 753 A.2d 176 (N.J. Super. Ct. App. Div. 2000); *Rankin v. Generali-U.S. Branch*, 986 S.W.2d 237 (Tenn. Ct. App. 1998) *and cases cited therein*).  Further, the court determined that most cases interpreting this policy language "involve[d] . . . the single word 'collapse' and not the entire phrase at

issue here: 'risks of direct physical loss involving collapse.'" *Id.* at 308 (citing

*Doheny W. Homeowners' Ass'n. v. Am. Guar. & Liab. Ins. Co.*, 70 Cal.Rptr.2d 260

(Cal. Ct. App. 1997)).  But, "as noted by one of the few courts to construe this exact

phrase, [the entire phrase 'risks of direct physical loss involving collapse'] is even

more ambiguous than the use of the word 'collapse' alone." *Id.* (citing *Doheny W.*,

70 Cal.Rptr.2d at 260).

[¶10.]        The *Ocean Winds* court identified three approaches for interpreting the

term collapse.  The first approach requires that the collapse be imminent before

coverage exists.  *Id.* (citing *Whispering Creek Condo. Owner Ass'n v. Alaska Nat'l

Ins. Co.*, 774 P.2d 176 (Alaska 1989); *Doheny W.*, 70 Cal.Rptr.2d at 260*; Fantis

Foods*, 753 A.2d at 176).  "'Imminent' means collapse is 'likely to happen without

delay; impending or threatening;' and requires a showing of more than substantial

impairment." *Id.* (citing *Doheny W.*, 70 Cal.Rptr.2d at 260).  The second approach

only requires showing a "substantial impairment" to the building.  *Id.* (citing *Island

Breakers v. Highlands Underwriters Ins. Co.*, 665 So.2d 1084 (Fla. App. 1995);

*Rankin*, 986 S.W.2d 237).  This approach is the "most lenient standard." *Id.*  The

third approach requires "actual collapse" and is the "most stringent" of the three

approaches.  *Id.* (citing *Fid. & Cas. Co. of N.Y. v. Mitchell*, 503 So.2d 870 (Ala. Civ.

App. 1987); *Heintz v. U.S. Fid. & Guar. Co.*, 730 S.W.2d 268 (Mo. Ct. App. 1987)).

[¶11.]        As a preliminary matter, we determine that the policy language at

issue here – "[w]e will pay for loss or damage caused by or resulting from risks of

direct physical loss involving collapse of a building" – is ambiguous.  The *Ocean*

*Winds* analysis demonstrates the ambiguity because insurance contracts using the same "collapse" provision are capable of at least three different constructions.

[¶12.]	After reviewing this issue, we elect to follow those jurisdictions that have adopted the first approach, which define collapse to include not only actual collapse, but also imminent collapse. Imminent collapse is defined as "likely to happen without delay; impending or threatening; and requires a showing of more than substantial impairment." *Ocean Winds*, 565 S.E.2d at 308 (citing *Doheny W.*, 70 Cal.Rptr.2d at 260). This approach is the reasonable middle ground between the second approach, advanced by Zoo Properties, and the third approach, advanced by Midwest Family Mutual. As noted in *Ocean Winds*, the second approach's "substantial impairment" requirement broadly permits recovery for damage that, "while substantial, does not threaten collapse." *Id.* Conversely, the third approach's requirement narrowly permits recovery for damage from "actual collapse." *See id.* As a result, the most reasonable construction of the term "collapse" is to define it to include "imminent collapse."[1]

## Conclusion

[¶13.]	Adopting the moderate first approach "protects the insured without distorting the purpose of the clause to protect against damage from collapse."

---

1.	The imminent collapse standard still recognizes the cracking exclusion present in the policy. The exclusion provides that "[c]ollapse does not include settling, cracking, shrinkage, bulging or expansion." In most instances, cracking will likely precede imminent and total collapse. But, as a matter of common sense, the cracking exclusion cannot serve to undermine the imminent collapse standard when cracking often precedes collapse. The excluded cracking is of the same nature and magnitude as "shrinkage, bulging or expansion."

*Ocean Winds*, 565 S.E.2d at 308.  And unlike the second and third approaches, requiring imminent collapse does not require this Court to make a forced construction of the term in either party's favor.  *See Gloe v. Union Ins. Co.*, 2005 S.D. 30, ¶ 29, 694 N.W.2d 252, 260.  Furthermore, the first approach's construction of collapse provides coverage for imminent collapse, which eliminates the incentive for policyholders to risk injury to others while waiting for actual collapse.[2]  We, therefore, reverse the circuit court's grant of summary judgment and remand for proceedings consistent with this opinion.

[¶14.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

---

2.    *Bruner and O'Connor's* treatise recognizes that "[b]roader coverage [of collapse provisions] is sometimes justified on the grounds that to restrict policy benefits to instances where the building actually falls down creates an incentive to forego repairs to avert imminent collapse."  4 Philip L. Bruner & Patrick J. O'Connor, *Bruner and O'Connor on Construction Law* § 11:230 (2010) (citing *Royal Indem. Co. v. Grunberg*, 155 A.D.2d 187, 189, 553 N.Y.S.2d 527 (3d Dep't 1990) (agreeing with "numerical majority of American jurisdictions [that] a substantial impairment of the structural integrity of a building is said to be a collapse" because to require the building to fall down would be "unreasonable" in light of an insured's duty to protect property from further damage).  *See also Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557 (9th Cir. 2004) (policy covered not only actual collapse but also imminent collapse)) (parenthetical explanations from *Bruner and O'Connor*).  *See generally* 10A *Couch on Insurance* 3d § 148:54 (2010) (citations omitted).