#25743-aff in pt & rem-JKK

**2011 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

OSCAR BATIZ,                                Plaintiff and Appellant,

    v.

FIRE INSURANCE EXCHANGE,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

ROLLYN H. SAMP
Sioux Falls, South Dakota                   Attorney for plaintiff
                               and appellant.


MELANIE L. CARPENTER of
Woods, Fuller, Shultz
 and Smith P.C.                             Attorneys for defendant
Sioux Falls, South Dakota                   and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 25, 2011

OPINION FILED **07/06/11**

#25743

KONENKAMP, Justice

[¶1.] In this declaratory judgment action, an insured disputes the amount to be paid for fire damage to his rental property. On cross motions for summary judgment, the circuit court granted judgment for the insurance company, dismissing the insured's action without prejudice. We affirm and remand.

## Background

[¶2.] A fire on July 22, 2008 damaged Oscar Batiz's residential rental property. He filed a claim with his carrier, Fire Insurance Exchange. Under the *Loss Settlement* section, the policy states:

(1) Actual Cash Value

If you do not repair or replace at the same location shown in the Declarations the damaged or destroyed dwelling or separate structure, we will pay the smallest of the following:
(a) the limit of insurance applying to the damaged or destroyed dwelling or separate structure.
(b) the **actual cash value** of the damaged or destroyed dwelling or separate structure.

(2) Replacement Cost. If you repair or replace at the same location shown in the Declarations the damaged or destroyed dwelling or separate structure, we will pay without deduction for depreciation the smallest of the following amounts:
(a) the limit of insurance under this policy that applies to the damaged or destroyed dwelling or separate structure;
(b) the replacement cost of that part of the dwelling or separate structure damaged with equivalent construction and for use on the same premises;
(c) the amount actually needed and spent to repair or replace the dwelling or separate structure intended for the same occupancy and use. However, if the cost to repair or replace is more than $1,000 or more than 5% of the limit of insurance on the damaged or destroyed building, whichever is less, we will pay no more than the **actual cash value** until repair or replacement is completed.

"Actual cash value" is defined as the "replacement cost of the property at the time of the loss less depreciation."

[¶3.]		After its investigation, Exchange determined that the amount to repair or replace the damaged property was $35,820.33. It tendered to Batiz $33,182.08, representing the actual cash value of the damaged property, less recoverable depreciation of $160.50, and non-recoverable depreciation of $1,477.75, and Batiz's $1,000 deductible. With this payment, Exchange advised Batiz in writing, "If for any reason your contractor indicates that they will be unable to complete the repairs for the amount [Exchange] has estimated, please call [Exchange] before the work begins. Prior approval must be obtained for additional repairs or increased costs not included in this estimate."

[¶4.]		Batiz disagreed with Exchange's valuation of the damage, and invoked the policy appraisal provision. The provision states: "If we [Exchange] and any insured person do not agree on the amount of loss, then we and any such insured person may agree that the issue be determined by appraisal." The policy further states that:

> [E]ach party will choose an able and impartial appraiser and notify the other of the appraiser's name within 20 days. The appraisers will choose an impartial umpire. If the appraisers cannot agree upon an umpire within 15 days, you or [Exchange] can ask a judge of a court of record in the state where the residence premises is located to choose an umpire.
>
> The appraisers will then set the amount of loss. If the appraisers cannot agree, they will submit their differences to the umpire. A decision by the appraisers or umpire will not be binding on the parties.

[¶5.]		Batiz chose Troy Thompson of Perfect Vision Construction as an appraiser. Exchange chose Barry Kolbeck of Omni Restoration. Thompson set the amount of loss at $101,999.18, as a "one time pay out that covered anything."

Kolbeck amended Exchange's valuation and set it at $38,056.71. Kolbeck explained that this amount was proper based on known covered damage to the property. Batiz disagreed with Kolbeck's appraisal. Kolbeck and Thompson then chose Chuck Ihlen of Amdahl Construction as the umpire appraiser. Ihlen determined that the cost to repair the property was $43,921. With his appraisal, Ihlen included a note: "It was agreed that the scope of repairs may require revisions during the repair process as unknown conditions may be exposed during the repairs. . . . It is our understanding that a supplemental adjustment to the payment for repairs is available if approved prior to those repairs." Ihlen signed the appraisal, as did Kolbeck. Thompson did not agree with the estimate, did not sign it, and wrote on the appraisal that his "estimate was a one time pay out that covered anything."

[¶6.]     Exchange tendered to Batiz an additional $8,415.41 to reflect Ihlen's appraisal, minus depreciation. Batiz did not cash or accept the payment. Exchange issued another check for $41,597.49, which was not cashed. Another check was issued later, and again Batiz did not cash the payment. Batiz had not made any repairs to the property. He brought a declaratory action against Exchange, seeking an order that the policy language relating to loss means that "the amount of loss is the $101,999.18 determined by" Thompson, or that the policy language is "ambiguous and as such, must be interpreted in favor of" Batiz so that Batiz's "appraiser's determination of the loss at $101,999.18 is the amount of loss," or "[t]hat serial determination of a completed loss is against the public policy of South Dakota and that the total loss suffered by [Batiz] is, therefore, $101,999.18[.]" Exchange answered and asked the court to declare that it "has satisfied its

obligations under its policy," as "[t]he policy at issue provides that if the damage to the property is less than the policy limits and if the property is repaired, then only the amount actually needed and spent to repair or replace the dwelling will be paid."

[¶7.]    Batiz and Exchange filed cross motions for summary judgment. At the hearing, Batiz argued that Kolbeck and Ihlen failed to calculate an amount of loss, which to Batiz should be a conclusive value and not open to future discovery of additional damage. He also argued that Exchange's policy language is ambiguous because the appraisal provision requires the appraisers to set the "amount of loss," while the loss settlement provision uses the phrase "actual cash value."

[¶8.]    The circuit court denied Batiz's motion for summary judgment. In its oral ruling, it suggested that Batiz's issue was not justiciable, as no repairs have been done in order to determine whether Exchange has breached its contract and failed to pay for the damage. It further concluded that the policy is unambiguous, requiring Exchange to pay only for the amount spent and needed for repair or replacement. The court granted Exchange's motion for summary judgment, dismissing Batiz's declaratory judgment action without prejudice. Batiz appeals asserting that a declaratory judgment can be issued before a breach of contract, and that the court erred when it held that there was no justiciable issue.

## Analysis and Decision

[¶9.]    Batiz argues that the phrases "actual cash value" and "amount of loss" as used in the insurance policy are uncertain under the facts of this case, which uncertainty can be resolved by declaratory relief. In Batiz's view, the circuit court

erred when it failed to declare what "amount of loss" and "actual cash value" mean under the policy so the parties could know their rights and obligations under the contract.

[¶10.]     "Insurance contract interpretation is a question of law reviewed de novo." *W. Nat'l Mut. Ins. Co. v. Decker*, 2010 S.D. 93, ¶ 10, 791 N.W.2d 799, 802 (citing *Auto-Owners Ins. Co. v. Hansen Hous., Inc.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d 504, 509 (citations omitted)). "Ambiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words." *Id.* ¶ 11 (quoting *Nat'l Sun Indust., Inc. v. S.D. Farm Bureau Ins. Co.*, 1999 S.D. 63, ¶ 18, 596 N.W.2d 45, 48 (citation omitted)).

[¶11.]     The circuit court reviewed the terms of the contract as a whole and determined that a declaratory judgment against Exchange was unwarranted because the phrases "actual cash value" and "amount of loss" as used in the policy create no ambiguity. Our review of the policy language leads to the same conclusion. The insurance policy unambiguously provides what rights and obligations the parties have under these facts. When the damage is less than the policy limits, the policy states that Exchange will pay only the amount actually needed and spent to repair or replace the damaged property. If the structure is not repaired or replaced, then Exchange will pay "the actual cash value of the damaged or destroyed dwelling."

[¶12.]     To adopt Batiz's construction of the policy and view the "amount of loss" phrases in the appraisal provision as controlling would require a strained interpretation of the contract. *See W. Nat'l Mut. Ins. Co.,* 2010 S.D. 93, ¶ 11, 791

N.W.2d at 802. The appraisal provision does not alter Exchange's obligation to pay under the policy or Batiz's rights to payment, which duties and rights are clearly controlled by the *Loss Settlement* provision. There being no ambiguity in the policy, the court did not err when it denied Batiz's request for declaratory relief in this respect.

[¶13.] Batiz next asserts that the vast difference between his appraiser's and the umpire's valuations presents a justiciable issue, requiring the court to determine the amount of loss. Batiz further claims that the court erred in interpreting the insurance policy to allow for payment of future unknown damages, as contracts must be definite and the total amount of loss must be set in this case.

[¶14.] The court, in its oral ruling, stated that the issue of what compensation Batiz will be entitled to under the contract is not thus far justiciable. This was because Batiz had not yet repaired or replaced the damaged property, and the policy unambiguously provides that without repair or replacement Exchange's obligation is only to pay actual cash value. Batiz does not challenge Exchange's "actual cash value" determination. Rather, he maintains that he is entitled to be paid in one sum for the "amount of loss," which amount will cover anything, including unknown and undiscovered damage.

[¶15.] While the appraisal provision of the policy requires the appraisers to set the amount of loss, the policy clearly provides that Batiz is not entitled to payment of that amount of loss, unless that amount is actually needed and spent to repair or replace the damaged property. The court was correct in ruling that Batiz's issue is premature. Batiz has not yet repaired or replaced the damaged property,

and thus he is entitled only to the actual cash value of the damaged property, if he chooses not to repair or replace.

[¶16.] Moreover, the policy is not indefinite because it allows for payment of future unknown costs when those costs are discovered. Under Replacement Cost, section (c), the policy provides that "we will pay *no more than* the **actual cash value** *until* repair or replacement is completed." (Emphasis added.) A fair reading of this provision means that Exchange will pay Batiz actual cash value now. Then, if Batiz repairs or replaces the damaged property, and unknown damage is discovered, Batiz can seek the amount actually spent and needed to repair or replace the property.

[¶17.] Batiz argues that there are several factual disputes precluding summary judgment. In particular, he asks this Court to remand for the circuit court to determine which appraiser is more credible and what amount of loss Batiz has suffered. Batiz is correct that credibility determinations and damage valuations are generally not appropriate for summary judgment. At this point, however, the court need not assess any appraiser's credibility, nor value Batiz's property damage or loss. It granted Exchange's motion for summary judgment dismissing Batiz's declaratory action because, at present, the issue of Batiz's loss is premature. We agree, and affirm the circuit court's grant of summary judgment to Exchange. We remand so that Batiz may still challenge Exchange's actual cash value determination if he chooses not to repair or replace the damaged property. If Batiz repairs or replaces the damaged property, then as agreed by Exchange, the claim would "remain open in the event that additional repairs become necessary

due to previously unknown conditions which are discovered during the repair process." Batiz may dispute such amount after remand.

[¶18.]     Affirmed and remanded.

[¶19.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.