#26076-r-GAS

**2012 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JAMES E. CORNELIUS,                          Plaintiff and Appellant,

    v.

NATIONAL CASUALTY COMPANY,                   Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

KENNETH E. BARKER
TIMOTHY J. VANDER HEIDE of
Barker Wilson Law Firm, LLP
Belle Fourche, South Dakota                  Attorneys for plaintiff
        and appellant.


DOUGLAS A. ABRAHAM of
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota                         Attorneys for defendant
        and appellee.


* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 14, 2012

OPINION FILED **04/18/12**

#26076

SEVERSON, Justice

[¶1.] James E. Cornelius initiated a declaratory judgment action against National Casualty Company (National Casualty) to determine whether a policy of insurance issued by National Casualty to Cornelius's employer, Live Line Maintenance, provided uninsured motorist coverage to Cornelius for injuries he sustained while occupying a vehicle owned by Live Line Maintenance. National Casualty moved for summary judgment. The circuit court granted the motion, finding that Cornelius could not recover uninsured motorist benefits. Cornelius appeals. We reverse.

## Background

[¶2.] Harold Baldwin was the sole proprietor of Live Line Maintenance, a business that provided construction and maintenance services to rural electric cooperatives in South Dakota, Nebraska, and Wyoming. Cornelius worked as a lineman for the business. On March 11, 2002, Cornelius was performing maintenance work on elevated electrical power lines and systems. Cornelius used a 1963 International bucket truck to perform his duties. Mounted on the truck was a boom with an open bucket that Cornelius used to lift himself to the top of the elevated power lines. As Cornelius was standing in the bucket of the truck performing his duties, he came in contact with one of the live lines. The electric current passed through his body to the bucket, and then to the ground through the boom of the truck. Cornelius sustained serious injuries as a result of this incident.

[¶3.] The bucket truck that Cornelius used in his employment with Live Line Maintenance was insured by National Casualty. The insurance policy

- 1 -

provided separate coverage for liability and uninsured motorist insurance. The liability coverage contained an exclusion for bodily injury sustained by an employee. National Casualty relied on this exclusion to deny liability coverage to Live Line Maintenance for the injuries Cornelius sustained.

[¶4.] In March 2008, Cornelius filed a complaint against National Casualty.[1] In his complaint, Cornelius asserted that the injuries he sustained were the result of Live Line Maintenance and Baldwin's negligent maintenance of the bucket truck. Specifically, Cornelius alleged that Live Line Maintenance and Baldwin failed to properly insulate the bucket and boom from the electrical charge. Cornelius sought a declaratory judgment that he was entitled to recover uninsured motorist benefits under the insurance policy issued by National Casualty to Live Line Maintenance.

[¶5.] National Casualty filed a motion for summary judgment in September 2010. The circuit court found that Cornelius was unable to recover uninsured motorist benefits under the insurance policy between Live Line Maintenance and National Casualty. The circuit court reasoned that uninsured motorist coverage only extends to accidents arising out of the "normal use" of a vehicle, which consists

---

1. Cornelius also filed an action in Wyoming state court. The Wyoming complaint alleged negligence against Baldwin and Powder River Energy Corporation (PRECorp). PRECorp owned the power line that Cornelius was working on at the time he was electrocuted. PRECorp filed a motion for summary judgment, asserting that it could not be held legally responsible for Cornelius's injuries. The Wyoming District Court agreed and granted summary judgment in favor of PRECorp. The issue was appealed to the Wyoming Supreme Court, which affirmed the district court's grant of summary judgment. *Cornelius v. Powder River Energy Corp.*, 152 P.3d 387 (Wyo. 2007).

of "transportation to and from destinations." Thus, the circuit court concluded, "Cornelius does not have [uninsured motorist] coverage for injuries that allegedly arose out of the negligent maintenance of a vehicle when the negligent maintenance was not connected with the transportation purpose of the vehicle."

**Standard of Review**

[¶6.] "Insurance contract interpretation is a question of law reviewed de novo." *Batiz v. Fire Ins. Exch.*, 2011 S.D. 35, ¶ 10, 800 N.W.2d 726, 728-29 (quoting *W. Nat'l Mut. Ins. Co. v. Decker,* 2010 S.D. 93, ¶ 10, 791 N.W.2d 799, 802). "We have developed special rules of construction that apply when interpreting an insurance policy." *Zoo Props., LLP v. Midwest Family Mut. Ins. Co.*, 2011 S.D. 11, ¶ 5, 797 N.W.2d 779, 780 (quoting *Chord v. Reynolds,* 1999 S.D. 1, ¶ 14, 587 N.W.2d 729, 732). "If the 'rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct,' the policy is ambiguous." *Id.* (quoting *Alverson v. Nw. Nat'l Cas. Co.,* 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235). "Ambiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words." *Batiz*, 2011 S.D. 35, ¶ 10, 800 N.W.2d at 729 (quoting *Decker,* 2010 S.D. 93, ¶ 11, 791 N.W.2d at 802)). If the provisions of an insurance policy are ambiguous, "we apply the 'rule of liberal construction in favor of the insured and strictly against the insurer.'" *Zoo Props.,* 2011 S.D. 11, ¶ 5, 797 N.W.2d at 780 (quoting *Reynolds,* 1999 S.D. 1, ¶ 14, 587 N.W.2d at 732). "This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured." *Reynolds*, 1999 S.D. 1, ¶ 14, 587 N.W.2d at 732

(quoting *Olson v. U.S. Fidelity and Guar. Co.*, 1996 S.D. 66, ¶ 6, 549 N.W.2d 199, 200).

## Decision

[¶7.]     The specific policy language that applies to Cornelius's claim for uninsured motorist benefits reads as follows:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

[¶8.]     The circuit court found that Cornelius was an "insured" as the term is defined under the insurance policy because he was "occupying" a "covered auto" at the time of the "accident." In making this finding, the circuit court noted that the bucket truck Cornelius was occupying at the time of the "accident" was owned by Live Line Maintenance and was specifically listed as a "covered auto."

[¶9.]     Under the insurance policy, an "uninsured motor vehicle" is defined as a "land motor vehicle . . . [f]or which an insuring or bonding company denies coverage . . . ." National Casualty denied liability coverage to Live Line Maintenance for the injuries Cornelius sustained. Therefore, the circuit court found that, under the terms of the insurance policy, the bucket truck upon which Cornelius was injured was an "uninsured motor vehicle."

[¶10.]     National Casualty does not challenge the circuit court's finding that the bucket truck was both a "covered auto" and an "uninsured motor vehicle." National Casualty also does not challenge the circuit court's finding that Cornelius

sustained his injuries as a result of an "accident," as the term is defined under the insurance policy. Accordingly, the sole issue on appeal is whether the circuit court erred in finding that Cornelius's injuries did not "result from the . . . maintenance" of the bucket truck.

[¶11.] We have stated, "Where it is necessary to review an insurance policy provision in light of statutory law, the court treats the statute as if it were actually written into the policy." *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275-76 (S.D. 1994). National Casualty argues that we should interpret the policy provision at issue in this case in light of SDCL 58-11-9, which requires that all liability insurance policies issued in South Dakota provide uninsured motorist coverage to the insured. The statute provides, in part:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

SDCL 58-11-9.

[¶12.] "The terms of the policy are to be construed in light of the purposes and intent of the applicable statute." *Vostad*, 520 N.W.2d at 276 (quoting *Kremer v. Am. Family Mut. Ins. Co.,* 501 N.W.2d 765, 768-69 (S.D. 1993)). In *Canal Insurance Company v. Abraham*, we explained that the purpose of South Dakota's uninsured motorist statutes "is to provide the same insurance protection to the insured party

who is injured by an *uninsured or unknown* motorist that would have been available to him had he been injured as a result of the negligence of a motorist covered by the minimum amount of liability insurance." 1999 S.D. 90, ¶ 29, 598 N.W.2d 512, 519 (quoting *Am. Family Mut. Ins. Co. v. Merrill*, 454 N.W.2d 555, 559 (S.D. 1990)).

[¶13.]     National Casualty argues that, under *Abraham*, Cornelius cannot recover uninsured motorist benefits for an accident that did not involve an uninsured third-party. We disagree. In *Abraham*, we examined the purpose of South Dakota's uninsured motorist statutes in order to determine whether coverage was mandated. We concluded, "The underinsured motorist coverage *mandated by law* was not meant to 'kick in' to cover single-vehicle accident suits which *are excluded by the policy language*; they are meant to protect the insured from uninsured third parties . . . ." *Id.* ¶ 28 (emphasis added). However, our holding in *Abraham* did not preclude parties from contracting for broader uninsured motorist coverage than is mandated by South Dakota law. Indeed, it is generally recognized that

> [i]nsureds and insurers are free to contract for [uninsured motorist] coverage greater than that mandated by statute. When coverage is equal to or greater than the statutory minimum, the rights of the parties are determined by the terms of the policy and the general principles of contract law. While statutory provisions are read into policies that do not afford minimum coverage, statutory provisions that authorize limits and exclusions on coverage otherwise provided will not be read into a policy that does not expressly and plainly include such authorized limits and exclusions.

9 *Couch on Insurance* 3d § 122:32 (2010) (citations omitted).

[¶14.] In this case, under the insurance policy National Casualty drafted, an "uninsured motor vehicle" is defined as a "land motor vehicle . . . for which any insuring or bonding company denies coverage." The circuit court determined that the bucket truck Cornelius was occupying at the time he was injured was an "uninsured motor vehicle." National Casualty has not challenged the circuit court's finding on this issue. The insurance policy does not contain an exclusion for single-vehicle accidents. We therefore find no basis for National Casualty's assertion that Cornelius is precluded from recovering uninsured motorist benefits because the accident did not involve an uninsured third-party. *See Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir. 1994) (holding that a claimant was entitled to recover uninsured motorist benefits for injuries she sustained in a single-vehicle accident because under the insurance policy, the definitions of "insured auto" and "uninsured auto" were not "mutually exclusive").

[¶15.] National Casualty also argues that Cornelius's loss is not covered by the uninsured motorist provisions of the insurance policy because Cornelius's injuries did not "result from the . . . maintenance" of the bucket truck. In support of this argument, National Casualty cites *Farm & City Insurance v. Estate of Davis,* 2001 S.D. 71, 629 N.W.2d 586. In that case, Tasha Davis was shot and killed by a gunman riding in a second, uninsured vehicle. *Id.* ¶ 4. Davis's estate filed for uninsured motorist benefits under Davis's automobile insurance policy. *Id.* ¶ 5. In order to recover uninsured motorist benefits, the automobile insurance policy required that the claimant's injury "arise out of the . . . use of the uninsured motor vehicle." *Id.* ¶ 10. We held that Davis's estate was not entitled to recover

uninsured motorist benefits because, at the time Davis died, the uninsured vehicle was not being used for its "normal and proper" purpose. *Id.* ¶¶ 10, 16. To determine what constituted the "normal" use of the vehicle, we examined SDCL 58-11-9 and the terms of the insurance policy at issue. We held that the use of the vehicle for an illegal purpose was clearly beyond any reasonable contemplation of the parties to the contract. We explained,

> [W]e do not believe [the uninsured motorist] made a "normal" use of his vehicle for transportation purposes. . . . Normal use consists of utilizing a vehicle for transportation to and from destinations. Using a vehicle to stalk another person with the intent of inflicting injury is in no way a "normal" use as that term is contemplated under SDCL 58-11-9 and the insurance policy language complying with that statute.

*Id.* ¶ 16.

[¶16.] National Casualty argues that under our holding in *Davis*, Cornelius's loss is not compensable because the alleged negligent maintenance that resulted in Cornelius's injuries was not performed "in support of the transportation purpose" of the bucket truck. Specifically, Cornelius's complaint alleges that his injuries were caused by Live Line Maintenance and Baldwin's failure to properly insulate the bucket and boom from the electrical charge. National Casualty emphasizes that the purpose of the bucket and boom was to raise and lower workers, not to transport individuals to and from a destination.

[¶17.] We must examine the terms of the insurance policy in order to determine what the parties contemplated would be the "normal and proper" purpose of the bucket truck. The insurance policy provides that only specifically described "autos" are covered. The insurance policy goes on to define an "auto" as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads . . . ."

"Mobile equipment" was excluded from the definition of "auto." However, the insurance policy expressly stated:

> [S]elf-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos": . . . .
>
> > b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers . . . .

[¶18.] The bucket truck upon which Cornelius was injured was described in the insurance policy as a covered "auto." The boom that was mounted on the bucket truck was a device similar to a cherry picker that was "used to raise and lower workers." Such a device was expressly covered under the insurance policy. We thus hold that it was within the contemplation of the parties that a "normal and proper" purpose of the bucket truck and the boom would be to "raise and lower workers" such as Cornelius.

[¶19.] National Casualty also cites *State Farm Mutual Automobile Insurance Company v. Vostad* in support of its argument that Cornelius is not entitled to uninsured motorist coverage. 520 N.W.2d 273. In *Vostad*, the insured died from carbon monoxide poisoning in a motor home that was parked inside of an enclosed shed. *Id*. at 274. We held that the insurer, State Farm, was not liable to provide uninsured motorist coverage to the insured's estate because the insured's death occurred while the motor home was being used as "premises." We stated,

> The State Farm policy language clearly excludes coverage when a vehicle is used as "premises." . . . It was not within the contemplation of the uninsured motorist statutes or the State Farm policy language that coverage would be afforded under facts such as these. We refuse to employ a strained or forced

> construction of the policy language to mandate uninsured motorist coverage in these unique circumstances.

*Id.* at 277-78.

[¶20.] The insurance policy at issue in *Vostad* explicitly excluded coverage "when a vehicle is used as 'premises.'" *Id.* In contrast, the policy at issue in this case expressly allows for coverage of "[c]herry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers . . . ." Thus, *Vostad* is readily distinguishable from this case.

[¶21.] We have stated that in the absence of ambiguity, "[a]n insurance contract's language must be construed according to its plain and ordinary meaning . . . ." *Friesz ex rel. Friesz v. Farm & City Ins. Co.*, 2000 S.D. 152, ¶ 8, 619 N.W.2d 677, 680 (quoting *St. Paul Fire & Marine Ins. Co. v. Schilling,* 520 N.W.2d 884, 887 (S.D. 1994)). In this case, we must determine the plain meaning of the clause of the insurance policy stating that uninsured motorist coverage is available when damages "result from the . . . maintenance" of the uninsured vehicle. We believe that, under the plain meaning of this clause, coverage is available when the negligent maintenance of the uninsured vehicle results in an accident that causes damages to the claimant. *See Bituminous Cas. Corp. v. N. River Ins. Co.,* 361 N.E.2d 60, 63 (Ill. App. 1977) (interpreting a clause providing coverage for damages "'caused by an occurrence [a]rising out of' the maintenance of the tractor" to mean that "liability will accrue where faulty or negligent maintenance of a vehicle results in an incident causing damages to another"); *Ply v. Nat'l Union Fire Ins. Co.*, 81 P.3d 643, 649-50 (Okla. 2003) (holding that allegations of an employer's non-contemporaneous negligent maintenance of an employer-owned vehicle was

sufficient to establish an employee's potential entitlement to uninsured motorist benefits); 8A *Couch on Insurance* 3d § 119:36 (2011) ("The meaning of a clause providing coverage for damages caused by an occurrence 'arising out of the maintenance' of a vehicle is that liability will accrue where faulty or negligent maintenance of the vehicle results in an accident causing damages to another, even where the negligent maintenance occurs prior to delivery of the automobile."). A claimant's injuries "result from the . . . maintenance" of the uninsured vehicle when there is a "causal connection" between the negligent maintenance of the vehicle and the incident that caused the claimant's damages.[2] *See Davis*, 2001 S.D. 71, ¶ 10, 629 N.W.2d at 588.

[¶22.] In his complaint, Cornelius alleged that there was a causal connection between Live Line Maintenance and Baldwin's alleged negligent maintenance of the bucket truck and the accident that caused Cornelius's injuries. Cornelius has presented evidence to support his claim. We thus hold that the circuit court erred in granting summary judgment in favor of National Casualty.

[¶23.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.

---

2. In *Davis*, we interpreted a clause of an insurance contract that provided uninsured motorist coverage for injuries "aris[ing] out of the . . . use of the uninsured motor vehicle." 2001 S.D. 71, ¶ 10, 629 N.W.2d at 588. We determined this language of the insurance contract required "a causal connection . . . between the use of the uninsured vehicle and the resulting harm." *Id*. ¶¶ 10, 14.