#27658-r-JMK

**2016 S.D. 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RICHARD PAPOUSEK and
LORAYNA PAPOUSEK,                                   Plaintiffs and Appellants,

          v.

DE SMET FARM MUTUAL
INSURANCE COMPANY
OF SOUTH DAKOTA,                                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

SARAH BARON HOUY
MICHAEL M. HICKEY of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                            Attorneys for plaintiffs
                                                    and appellants.


JESSICA L. LARSON of
Beardsley, Jensen & Lee, Prof. LLC
Rapid City, South Dakota                            Attorneys for defendant
                                                    and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MAY 23, 2016

OPINION FILED **07/20/16**

#27658

KERN, Justice

[¶1.]        Insured's cattle died in 2013 during Winter Storm Atlas.  Insurer declined coverage, claiming a plain and ordinary construction of the insurance policy providing indemnification for loss of livestock by drowning precluded recovery.  A circuit court agreed and granted summary judgment in favor of insurer. We reverse.

*Facts and Procedural History*

[¶2.]        Richard and Lorayna Papousek own and operate a crop-and-livestock ranch in Quinn, South Dakota.  A massive, record-breaking storm named Winter Storm Atlas struck the area October 3–5, 2013.  The storm began as rain and then turned into snow.  After the storm subsided, Papouseks discovered that 93 of their yearling heifers (cattle) were dead.  Papouseks hired Dr. Jim McConaghy, DVM, to ascertain the cause of the cattle's death.  Dr. McConaghy conducted postmortem examinations (necropsies) on 8 to 10 of the cattle.  Dr. McConaghy determined the cause of the cattle's death was drowning.

[¶3.]        At the time of the storm, Papouseks had in effect a Farmowner–Ranchowner Policy (Policy) purchased from De Smet Farm Mutual Insurance Company of South Dakota (De Smet).  The Policy, as it relates to the cattle, is a named-peril policy that transferred the risk of loss from 12 identified perils to De Smet.  One of the perils insured "against direct physical loss to [cattle] caused

by . . . [d]rowning."[1]  Papouseks filed a claim under the drowning provision, but De Smet denied the claim because none of the 93 cattle were found submerged in water.

[¶4.]        Papouseks filed an action for declaratory judgment in circuit court, per SDCL chapter 21-24, seeking a decision as to whether the Policy covered the cattle losses.  Following deposition testimony by Richard Papousek and Dr. McConaghy, De Smet and Papouseks filed cross-motions for summary judgment.  The circuit court issued a written opinion holding that the plain meaning of drowning is "the deprivation of life by immersion in water or other liquid."  Since none of the cattle were found submerged in water, the court granted summary judgment in favor of De Smet.  Papouseks appeal the court's interpretation of the drowning provision. Papouseks argue the drowning provision is ambiguous and, therefore, should be construed in their favor.  *See Zoo Props., LLP v. Midwest Family Mut. Ins. Co.*, 2011 S.D. 11, ¶ 5, 797 N.W.2d 779, 780.  Whether an insurance contract is ambiguous is a question of law reviewed de novo.  *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726.

---

1.    The Policy stated:

> This policy insures against direct physical loss to [the cattle] caused by the following perils:
>
> . . .
>
> 12. **Electrocution, Drowning, Attack by Animals and Accidental Shooting of Livestock.**  When this policy covers livestock, it shall include loss of said livestock by electrocution, drowning . . . .

*Decision*

[¶5.]     "Drowning" is undefined in the Policy, and both De Smet and Papouseks offer reasonable interpretations of the term. De Smet points out that a common understanding of the term requires some form of submersion or immersion in water or other liquid. *See De La Cruz v. Combined Am. Ins. Co.*, 527 S.W.2d 820, 821 (Tex. Civ. App. 1975) (referring to drowning "as meaning to deprive of life by immersion in water or other liquid"); *Webster's Third New International Dictionary* 695 (4th ed. 1976) (defining drowning in part as "to suffocate by submersion in water or some other liquid"). Papouseks point out, however, that reasonable people understand that the hallmark of drowning is not the presence of water outside the body; rather, it is death caused by water or fluid within the body. *See Int'l Inv'rs Life Ins. Co., Inc. v. Utrecht*, 536 S.W.2d 397, 399 (Tex. Civ. App. 1976) (referring to drowning as "death resulting from inhalation of water or some other fluid into the lungs"); *Webster's Third New International Dictionary* 695 (4th ed. 1976) (defining drowning in part as "to suffocate because of excess body fluid that interferes with the passage of oxygen from the lungs to the tissue"); *see also Saunders Comprehensive Veterinary Dictionary* 362 (2d ed. 1998) (defining drowning as "suffocation resulting from aspiration of water . . . or fluid. Drowning occurs because the liquid prevents breathing."). Because we agree with Papouseks that the undefined term is susceptible to these two reasonable interpretations, the provision indemnifying loss caused by drowning is ambiguous. We therefore construe the provision liberally in Papouseks' favor. *See Zoo Props., LLP*, 2011 S.D.

11, ¶ 5, 797 N.W.2d at 780.  In turn, the dispositive question is whether Papouseks established that the cattle died from inhaling water.

[¶6.]      During the postmortem examinations of the cattle, Dr. McConaghy found the cattle's lungs were saturated with water and their airways were obstructed with foam (air trapped in water).  In addition, Dr. McConaghy found clear liquid in all airways and running from the cattle's noses.  Dr. McConaghy speculated that during the storm, the cattle inhaled large quantities of rain and then snow, resulting in a lack of oxygen and eventually cardiac arrest and death.  In Dr. McConaghy's opinion, his findings indicated that the cattle "absolutely died due to drowning."  De Smet neither refuted Dr. McConaghy's findings nor contradicted his opinion with competent evidence.  Indeed, De Smet proffered no evidence to the contrary.  Based on this record, we find Papouseks established coverage under the drowning provision.

[¶7.]      Yet De Smet contends that it proved an exclusion to coverage under a discrete policy provision.  *See Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727 (insurer has burden to establish exclusion); *see supra* ¶ 3 n.1 ("This policy insures against direct physical loss to [the cattle] *caused by the following perils.*" (emphasis added)).  Under the policy provision covering loss caused by windstorms or hail, the Policy provides that coverage does not exist for loss "caused directly or indirectly by frost, cold weather, ice (other than hail), snow or sleet, all whether wind-driven or not;" and loss to livestock caused by or resulting from "smothering,

suffocation or asphyxiation" or "freezing in blizzards or snowstorms[.]"[2]  De Smet asserts that because Papouseks proffered evidence that the cattle died—in part— from the inhalation of snow, this language applies and excludes coverage.  But this is a named-peril policy, and Papouseks only claimed coverage based on the drowning peril.  Importantly, the drowning provision contains no exclusions or similar explanatory language.  *See supra* ¶ 3 n.1; *see also* 10 Steven Plitt et al., *Couch on Insurance* § 143:105 (3d ed.), Westlaw (database updated June 2016) ("Policy provisions may provide explicit coverage for drowning, which may also limit the recovery allowed when death is by drowning or restrict coverage to drowning under certain circumstances.").  Furthermore, to the degree that De Smet believes this explanatory language also modifies the drowning provision, it is mistaken—the explanatory language of the windstorms-or-hail provision is prefaced by "[*t*]*his* does

2.     The Policy stated:

> This policy insures against direct physical loss to [the cattle] caused by the following perils:
>
> . . .
>
> > 2. **Windstorm or Hail.** *This* does not cover loss:
> >
> > > a. caused directly or indirectly by frost, cold weather, ice (other than hail), snow or sleet, all whether wind-driven or not;
> > >
> > > . . .
> > >
> > > c. to **livestock** caused by or resulting from:
> > >
> > > > 1) running into streams or ditches or against fences or other objects;
> > > >
> > > > 2) smothering, suffocation or asphyxiation;
> > > >
> > > > 3) fright; or
> > > >
> > > > 4) freezing in blizzards or snowstorms[.]

(Emphasis added.)

not cover loss", followed by the list explaining the scope of coverage. (Emphasis added.) Thus, the explanatory language limiting the scope of coverage for losses caused by windstorms or hail neither applies to this case nor modifies the other covered perils. De Smet failed to prove that an applicable policy exclusion exempted Papouseks from coverage.

[¶8.]     The parties concede that the material facts are undisputed as indicated by their cross-motions for summary judgment. The facts establish coverage based upon a fair reading of the entire Policy, *see* SDCL 58-11-39,[3] and specifically under the drowning provision. Accordingly, we reverse the circuit court's order granting summary judgment in favor of De Smet and remand for the circuit court to enter summary judgment in favor of Papouseks.

[¶9.]     GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶10.]     SEVERSON and WILBUR, Justices, concur in result.


SEVERSON, Justice (concurring in result).

[¶11.]     I concur in the result. The Policy covers named perils including drowning, and no applicable exclusions apply. The uncontested opinion of Dr. McConaghy from his postmortem examination, submitted to the court by affidavit at the summary judgment hearing, was that the cattle died from drowning. I would not find the term drowning to be ambiguous. The term only became ambiguous

---

3.     SDCL 58-11-39 provides: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy."

#27658

when the circuit court added words from dictionary definitions to a clear term in the Policy. The clear terms of the Policy do not limit drowning to submersion in water. Thus I concur in reversal and remand to the circuit court to enter summary judgment in favor of Papouseks.

[¶12.]     WILBUR, Justice, joins this special writing.