#28623, #28632-a-JMK
**2019 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KAYNE R. LARIMER, as Special
Administrator of the Estate of
Nehemiah J. Larimer, Deceased,                    Plaintiff and Appellee,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,                                Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE HEIDI L. LINNGREN
Judge

\* \* \* \*

JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise, Sauck
  & Hieb, LLP                              Attorneys for defendant
Aberdeen, South Dakota                            and appellant.


REXFORD A. HAGG of
Whiting, Hagg, Hagg, Dorsey
  & Hagg, LLP                               Attorneys for plaintiff
Rapid City, South Dakota                          and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
JANUARY 7, 2019
OPINION FILED **04/10/19**

KERN, Justice

[¶1.] Kayne Larimer, as Special Administrator of the Estate of Nehemiah Larimer, brought an action for declaratory judgment seeking underinsured motorist benefits under two insurance policies with American Family Mutual Insurance Co. (American Family) following Nehemiah's death in an accident. Pursuant to an "owned but not insured" exclusion in the Larimers' underinsured motorist benefits endorsement, American Family denied coverage. The parties filed cross-motions for summary judgment. The circuit court, finding the policy language ambiguous, held in favor of Kayne. American Family appeals. Kayne filed a notice of review contending the terms of the owned but not insured exclusion violate public policy. We affirm.

### Facts and Procedural History

[¶2.] On March 27, 2015, eighteen-year-old Nehemiah collided with an automobile while driving his 49cc moped in Rapid City. Nehemiah suffered fatal injuries and passed away the following day. The at-fault automobile driver was insured by American Family under his family's policy. The policy paid Nehemiah's estate up to its $100,000 coverage policy limits.

[¶3.] Nehemiah was also insured under his parents' policies with American Family, including a South Dakota Family Car Policy (Car policy) and a Personal Liability Umbrella Policy (Umbrella policy). Under the Car policy, the Larimers insured five automobiles, but Nehemiah's moped was not listed as one of the insured vehicles. Mopeds are exempt from registration and title requirements; however, owners may license or title a moped if they wish. SDCL 32-5-1.2;

SDCL 32-3-2.3. The Larimers also purchased an Underinsured Motorists Coverage Endorsement (Endorsement) for the Car policy. The Endorsement provided "compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle." The Umbrella policy also contained a provision for uninsured and underinsured motorist claims. The coverage applied to "damages in excess of the primary limit[,]" and was "no broader than the underlying insurance."

[¶4.] On August 18, 2015, the Larimers made an underinsured motorist claim under their Car and Umbrella policies. On September 17, American Family denied the claim pursuant to an exclusion contained in the Endorsement providing that underinsured motorist coverage did not apply to bodily injury suffered "[w]hile occupying, or when struck by, a motor vehicle that is not insured under this policy, if it is owned by you or any resident of your household." This provision is commonly known as an "owned but not insured" exclusion. American Family, relying on the definition of motor vehicle contained in the Endorsement, determined that "Nehemiah was riding a moped at the time of the accident, so is considered to have been occupying a motor vehicle that was not insured under this policy. Therefore, the Exclusion . . . would apply and there would be no Underinsured Motorist Coverage." American Family also denied coverage under the Umbrella policy because that policy was "no broader than the underlying insurance."

[¶5.]     Kayne brought an action for declaratory judgment on May 19, 2016, seeking, in part, a declaration "[t]hat the underinsured coverage of Defendant's policies is portable and followed the insured at all times pertinent hereto so as to provide coverage for the acts of underinsured motorists[,]" and "[t]hat the clear underinsured coverage is not negated by any exclusion[.]"  Kayne sought relief "based on the contracts of insurance, with coverage up to the umbrella underinsured limits of $1,000,000."  Kayne moved for summary judgment and American Family made a cross-motion for summary judgment.  After a hearing, the circuit court, finding the language of the policy ambiguous, issued a memorandum decision granting Kayne's motion for summary judgment and denying American Family's motion.  American Family appeals, raising one issue for our review:

> 1. Whether the language of the underinsured motorist endorsement is ambiguous.

By notice of review, Kayne raises one issue:

> 2. Whether the owned but not insured exclusion from the underinsured motorist coverage is void as against public policy.

## Standard of Review

[¶6.]     "We review a circuit court's entry of summary judgment under the de novo standard of review."  *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700.  When conducting a de novo review, "[w]e give no deference to the circuit court's decision to grant summary judgment. . . ."  *Oxton v. Rudland*, 2017 S.D. 35, ¶ 12, 897 N.W.2d 356, 360.  "When reviewing a circuit court's grant of summary judgment, this Court only decides whether genuine issues of material fact exist and whether the law was correctly applied."  *Ass Kickin Ranch, LLC v. N. Star*

*Mut. Ins. Co.*, 2012 S.D. 73, ¶ 6, 822 N.W.2d 724, 726 (internal quotation marks omitted). Here there are no disputed facts, so our task is to determine whether the circuit court correctly applied the law. We can affirm the circuit court for any basis which supports the court's ultimate determination. *BAC Home Loans Servicing, LP v. Trancynger*, 2014 S.D. 22, ¶ 8, 847 N.W.2d 137, 140.

## Analysis and Decision

1. *Whether the language of the underinsured motorist endorsement is ambiguous.*

[¶7.] In reaching its decision, the circuit court determined that the key issue was "whether or not the 'owned but not insured' [exclusion] applies to the 'moped' or 'scooter' on which Nehemiah was riding at the time of his death." The court, examining the definitions used in the entire contract, found that "under this set of facts . . . the language set forth in both the [Car policy] and the [U]mbrella policy [is] ambiguous[,]" and therefore determined that American Family had not met its burden of proving the exclusion applied. American Family argues that the circuit court erred by considering the definitions contained in the entire contract. It contends the Endorsement's definition of "motor vehicle" unambiguously included Nehemiah's moped, meaning the owned but not insured exclusion applied.

[¶8.] Contract interpretation requires examination of the entire contract. *See Lowery Constr. & Concrete, LLC v. Owners Ins. Co.*, 2017 S.D. 53, ¶ 12, 901 N.W.2d 481, 485-86. SDCL 58-11-39 provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy." To determine the scope of coverage

in an insurance policy, we confine ourselves to the "plain and ordinary meaning" of the language of the policy and may not "make a forced construction or a new contract for the parties." *Ass Kickin Ranch*, 2012 S.D. 73, ¶ 10, 822 N.W.2d at 727. "When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Id.* ¶ 9. "This burden is satisfied when the insurer shows the claim *clearly* falls outside of policy coverage." *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, ¶ 18, 741 N.W.2d 228, 234 (internal quotation marks omitted).

[¶9.]     If, after examining the plain meaning of the whole policy, there is a "genuine uncertainty as to which of two or more meanings is correct, the policy is ambiguous." *Cornelius v. Nat'l Cas. Co.*, 2012 S.D. 29, ¶ 6, 813 N.W.2d 167, 169 (internal quotation marks omitted). Where the contract is ambiguous, "the interpretation most favorable to the insured should be adopted." *Ass Kickin Ranch*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727. However, a court may not "seek out a strained or unusual meaning for the benefit of the insured." *Id.* ¶ 10.

[¶10.]     Here, the Endorsement contains language above the definition section that reads "ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT ONLY." The Endorsement defines a motor vehicle as:

> [A] land motor vehicle or a trailer, but it does not mean a vehicle:
>     a. Operated on rails or crawler-treads.
>     b. Which is a farm type tractor or equipment designed for use mainly off public roads, while so used.
>     c. Parked for camping or housekeeping purposes.

Under this definition, if a moped is a *land motor vehicle*, it is a motor vehicle. But the Endorsement does not define what constitutes a *land motor vehicle*. Moreover, no other language within the Endorsement indicates whether a moped is a *land motor vehicle*. Certainly, a moped is operated on land. But it is unclear whether the policy would contemplate that a moped is a *motor vehicle* simply because it has a motor. In fact, the three exceptions from the definition indicate that not all vehicles with motors may be classified as motor vehicles under the Endorsement. Further, the Endorsement lacks sufficient criteria to allow a reasonable inference as to why the excepted vehicles are in fact *not* motor vehicles as defined by the Endorsement, but a moped should be so considered. Applying the minimal guidance provided by the definition of motor vehicle in the Endorsement, it would be equally reasonable to conclude that mopeds either may or may not be motor vehicles.

[¶11.] While there is limiting language above the definition section of the Endorsement modifying other portions of the policy, the lack of clarity regarding whether a moped is a *land motor vehicle* requires us to examine the entirety of the policy in effect at the time of Nehemiah's accident to determine the intent of the parties regarding the definition of moped. There are several other definitions within the policy that could implicate the scope of coverage for mopeds. The Car policy defines "car" as "your insured car, a private passenger car, and a utility car." A moped cannot reasonably be included within this definition of car. The Umbrella policy, however, provides a definition of a "car" as a "*land motor vehicle*[] designed for travel on public roads or subject to motor vehicle registration[,]" including a "[m]otorcycle or *moped when licensed for road use*[.]" (Emphasis added.)

[¶12.] American Family's decision to include only mopeds "licensed for road use" in the Umbrella policy definition of a *land motor vehicle* supports the conclusion that American Family did not intend a *land motor vehicle* in the Endorsement to be an unlicensed moped. Therefore, after considering the definitions used by American Family throughout the Endorsement, Car policy, and Umbrella policy we conclude that American Family has not met its burden of proving that Nehemiah's moped clearly fell outside of policy coverage. The exclusion precluding underinsured motorist benefits for injuries sustained while occupying a "motor vehicle that is not insured under this policy" does not apply, and the circuit court did not err when it granted Kayne's motion for summary judgment.

      2.     *Whether the owned but not insured exclusion from the underinsured motorist coverage is void as against public policy.*

[¶13.] Having concluded that the language of the policy is ambiguous and that underinsured motorist coverage applied, we need not address whether the owned but not insured exclusion from underinsured motorist coverage violates public policy.

## Conclusion

[¶14.] We affirm the circuit court's grant of summary judgment in favor of Kayne. Because the language of the policy was ambiguous we adopt the interpretation most favorable to the insured.

[¶15.] GILBERTSON, Chief Justice, and JENSEN and SALTER, Justices, concur.

[¶16.] SEVERSON, Retired Justice, concurs in result.

SEVERSON, Retired Justice (concurring in result).

[¶17.]     Although I agree the circuit court's decision should be affirmed, I write specially to reiterate my view that an owned but not insured exclusion is void as against public policy. *See De Smet Insurance Company v. Pourier*, 2011 S.D. 47, ¶ 17, 802 N.W.2d 447, 453 (Meierhenry, R.J., dissenting). In *Pourier*, I joined Retired Justice Meierhenry's compelling dissent, which argued that the Legislature did not intend for insurers to avoid paying underinsured motorist benefits for their insured's uncompensated damages when it enacted SDCL 58-11-9.5. That view remains true today, and I would declare American Family's owned but not insured exclusion void as against public policy.

[¶18.]     "[C]onditions and limitations imposed by the insurance company *must* be consistent with public policy[.]" *Phen v. Progressive N. Ins. Co.*, 2003 S.D. 133, ¶ 6, 672 N.W.2d 52, 54 (emphasis added). We examine applicable statutes to determine what is required and then examine the particular insurance policy to determine if it conforms to the public policy as established by the Legislature. *Cornelius v. Nat'l Cas. Co.*, 2012 S.D. 29, ¶¶ 12-13, 813 N.W.2d 167, 171. While coverage exclusions are allowed, they must be clear and not in conflict with insurance statutes. *Phen*, 2003 S.D. 133, ¶ 6, 672 N.W.2d at 54.

[¶19.]     Here, SDCL 58-11-9.5 establishes the public policy of providing coverage for injuries caused by the actions of underinsured drivers. *See Pourier*, 2011 S.D. 47, ¶ 12, 802 N.W.2d at 451. The Legislature *mandates* that an insurance company "agree[ ] to pay *its own insured* for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an

automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon." SDCL 58-11-9.5 (emphasis added). However, "[c]overage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against." *Id.*

[¶20.] By its terms, nothing in SDCL 58-11-9.5 limits an insured's right to recover underinsured benefits on whether that insured obtained liability insurance coverage on all vehicles. And while the majority of the Court upheld an owned but not insured exclusion in *Pourier,* it did so on the facts of the case. The Court in *Pourier* recognized its holding does not mean "an insurer has unfettered authority to create conditions against coverage." 2011 S.D. 47, ¶ 12 n.4., 802 N.W.2d at 451 n.4. Rather, to determine whether an exclusion violates public policy, we must "examine the exclusion within the facts of this case[.]" *Id.* ¶ 12 n.5. Indeed, to conclude otherwise and apply *Pourier* without regard to the facts of this case would in effect nullify the Legislature's stated policy that underinsured motorist coverage protect the *insured.*

[¶21.] The undisputed facts indicate Nehemiah was an insured, was injured in an automobile accident with an underinsured motor vehicle, and experienced uncompensated damages on account of that accident. These facts undeniably implicate underinsured coverage. American Family, however, excludes coverage when the insured is injured in an accident while occupying an owned but not insured vehicle. At the time of the accident, Nehemiah was occupying an uninsured moped owned by him. Assuming a moped is a vehicle, the exclusion would apply.

But the Larimers had no obligation to list the moped under their policies as an insured vehicle.  *See* SDCL 32-5-1.2 (Mopeds are exempt from registration and title requirements.).  Thus, Nehemiah might as well have been occupying a bicycle.  Moreover, unlike the injured insured in *Pourier*, Nehemiah has received zero underinsured benefits under any policy for which he was an insured driver.

[¶22.]        Under these facts, American Family's exclusion is not valid, and we should not uphold it.  *See contra Pourier*, 2011 S.D. 47, ¶ 12 n.5, 802 N.W.2d at 452 n.5 (explaining that "if under the facts of this case the exclusion is valid, we will uphold it").  One year after this Court upheld the exclusion in *Pourier*, we invalidated an owned but not insured exclusion as it related to *uninsured* motorist coverage under SDCL 58-11-9.  *Wheeler v. Farmers Mut. Ins. Co.*, 2012 S.D. 83, ¶ 23, 824 N.W.2d 102, 109.  Although the Court reached this result by distinguishing the Legislature's intent with regard to *underinsured* coverage and *uninsured* coverage, the differentiation only augments the injustice.

[¶23.]        To be clear, the statutes mandating underinsured and uninsured motorist coverage reflect Legislative intent to protect an insured when that insured is injured by an at-fault underinsured or uninsured driver.  SDCL 58-11-9; SDCL 58-11-9.4, -9.5.  As such, I would find that all owned but not insured exclusions violate public policy, or at the very least, that American Family's "exclusion violates SDCL 58-11-9.5 and is void as against public policy."  *See Pourier*, 2011 S.D. 47, ¶ 19, 802 N.W.2d at 453 (Meierhenry, R.J., dissenting).