#30732-r-SRJ
**2025 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| DAVID H. EARLL and MARCIA R. EARLL, Individually and as Co-personal representatives of the ESTATE OF REBECCA A. EARLL, | Plaintiffs and Appellants, |
| v. | |
| FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA, | Defendant and Appellee. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RACHEL R. RASMUSSEN
Judge

\* \* \* \*

| | |
|---|---|
| RONALD A. PARSONS, JR. SCOTT A. ABDALLAH of Johnson, Janklow & Abdallah, LLP Sioux Falls, South Dakota | Attorneys for plaintiffs and appellants. |
| JUSTIN T. CLARKE ALAYNA A. HOLMSTROM of Davenport, Evans, Hurwitz & Smith, LLP Sioux Falls, South Dakota | Attorneys for defendant and appellee. |

\* \* \* \*

ARGUED
OCTOBER 2, 2024
OPINION FILED **03/26/25**

JENSEN, Chief Justice

[¶1.] After their daughter, Rebecca Earll, was killed in a motor vehicle accident by an underinsured motorist, David and Marcia Earll (the Earlls) made a claim for underinsured motorist (UIM) benefits under their motor vehicle liability policy issued by Farmers Mutual Insurance Company of Nebraska (Farmers Mutual). Farmers Mutual denied the claim based on an "owned but not insured" exclusion in the policy. The Earlls brought an action for declaratory judgment seeking a determination that the "owned but not insured" exclusion was contrary to public policy and they were entitled to UIM benefits for Rebecca's death. The parties filed cross motions for summary judgment. The circuit court granted summary judgment in favor of Farmers Mutual and denied the Earlls' motion. The Earlls appeal. We reverse.

## Factual and Procedural Background

[¶2.] On December 22, 2022, Rebecca was killed in a motor vehicle collision when William Pigg ran a stop sign while traveling at a speed of 97 miles per hour and crashed into Rebecca's Subaru Forester. Rebecca was not at fault for the accident. The collision and the resulting death of Rebecca were proximately caused by the negligence of Pigg, who had a motor vehicle liability policy with Progressive Insurance with limits of $25,000. Rebecca had a motor vehicle liability policy with Farmers Mutual covering the Subaru Forester that included $100,000 in UIM coverage.

[¶3.] Following Rebecca's death, the Earlls were appointed as co-personal representatives of Rebecca's Estate (the Estate). Progressive tendered the $25,000

from Pigg's policy to the Earlls and to Rebecca's Estate. Farmers Mutual gave its permission to settle that claim without jeopardizing the UIM claims. Farmers Mutual also paid $75,000 in UIM benefits under Rebecca's own auto policy with Farmers Mutual, after properly offsetting the $25,000 received from Pigg's liability carrier. The UIM benefits under this policy are not the subject of the current dispute.

[¶4.] The Earlls sought an additional $250,000 in UIM benefits under a separate motor vehicle policy they purchased from Farmers Mutual, which provided coverage for two vehicles owned by the Earlls that were not involved in the accident. The policy includes UIM coverage for "insureds." The policy defines an "insured" to include a "relative." A "relative" is further defined as "a person related to you or your spouse by blood . . . who lives with you." At the time of the accident, Rebecca lived with her parents, and it is undisputed that she qualifies as an "insured" for the purpose of UIM coverage under the policy.

[¶5.] Farmers Mutual denied UIM coverage to the Earlls based on an "owned but not insured" exclusion in the policy because Rebecca was driving her Subaru Forester—a vehicle not listed in the declarations of her parents' policy—at the time of the accident. The "owned but not insured" exclusion at issue provides:

> EXCLUSIONS FOR UNDERINSURED MOTOR VEHICLE COVERAGE
>
> There is no coverage for: . . .
>
> 2. bodily injury to any insured while occupying, or through being struck by, a motor vehicle or trailer of any type owned by you, your spouse, or a relative if it is not insured for this coverage under this policy.

[¶6.]     Following the denial, the Earlls, individually and as co-personal representatives of the Estate, filed an action for declaratory judgment. The Earlls sought a declaration that they were entitled to UIM benefits for all claims and liability arising from the accident up to the policy limits, and that the "owned but not insured" exclusion violated public policy and was unenforceable as applied to Rebecca and her parents as insureds under the policy.

[¶7.]     The parties filed cross motions for summary judgment and agreed to stipulated facts in support of their respective motions. The Earlls' motion sought a declaratory judgment that they were "entitled to recover up to the $250,000 limits of [UIM] coverage" and that the "owned but not insured" exclusion violated public policy. Farmers Mutual's motion sought a declaration that the "owned but not insured" exclusion is valid and enforceable.

[¶8.]     In its motion for summary judgment and in resistance to the Earlls' motion, Farmers Mutual argued that the phrase "subject to the terms and conditions" in SDCL 58-11-9.5 allows for reasonable exclusions from UIM coverage. Farmers Mutual relied on this Court's decision in *De Smet Insurance Company of South Dakota v. Pourier*, which held that an "owned but not insured" exclusion for UIM coverage was enforceable and not void as against public policy. 2011 S.D. 47, ¶ 12, 802 N.W.2d 447, 451–52.

[¶9.]     The Earlls, by contrast, contended that *Pourier* should either be overruled or distinguished. They emphasized that the South Dakota Supreme Court has since held that similar "owned but not insured" exclusions violate public policy in the context of uninsured motorist (UM) coverage. *Wheeler v. Farmers Mut.*

*Ins. Co.*, 2012 S.D. 83, ¶ 23, 824 N.W.2d 102, 109.  Given the shared statutory purpose of UM and UIM coverage and that both types of coverage are mandatory, the Earlls argued that the "owned but not insured" exclusion violates South Dakota public policy because it "abrogate[s] statutorily mandated coverage that is personal to each insured."

[¶10.]    Following a hearing, the circuit court granted Farmers Mutual's motion for summary judgment and denied the Earlls' motion.  The court acknowledged that "the purpose of UM/UIM coverage is to protect the insured party who is injured in an automobile accident by the negligence of an uninsured/underinsured motorist."  *Gloe v. Iowa Mut. Ins. Co. (Gloe I)*, 2005 S.D. 29, ¶ 17, 694 N.W.2d 238, 245 (citation omitted).  Nonetheless, the circuit court concluded that the "owned but not insured" exclusion was enforceable based upon this Court's decision in *Pourier*.

[¶11.]    The Earlls appeal raising a single issue of whether the "owned but not insured" exclusion to UIM coverage violates South Dakota public policy.

## Standard of Review

[¶12.]    "We review a circuit court's entry of summary judgment under the de novo standard of review."  *Larimer v. Am. Family Mut. Ins. Co.*, 2019 S.D. 21, ¶ 6, 926 N.W.2d 472, 475 (citations omitted).  "We affirm the circuit court 'when there are no genuine issues of material fact and the legal questions have been correctly decided.'"  *Acuity v. Terra-Tek, LLC*, 2024 S.D. 49, ¶ 13, 11 N.W.3d 96, 100 (citation omitted).  When the facts are undisputed "our task is to determine whether the

circuit court correctly applied the law." *Larimer*, 2019 S.D. 21, ¶ 6, 926 N.W.2d at 475.

## Analysis

[¶13.] The Earlls ask this Court to overrule our decision in *Pourier* or alternatively distinguish it from the circumstances of the present case. The core of the Earlls' argument is that the "owned but not insured" exclusion undermines the purpose of UIM coverage, as expressed in statute and our cases. They contend that UIM coverage, like UM coverage, is designed to protect insureds who suffer injuries or death due to the negligence of underinsured/uninsured motorists. *See Gloe I*, 2005 S.D. 29, ¶ 17, 694 N.W.2d at 245. The Earlls argue that *Pourier* failed to consider the similar public policy underlying mandatory UM/UIM coverage and largely sidestepped the issue of what types of exclusions are permissible under the "subject to the terms and conditions" language in SDCL 58-11-9.5 by reframing the language as a legislative approval of an insurer's "right to place terms and conditions on" UIM coverage. *Pourier*, 2011 S.D. 47, ¶ 12, 802 N.W.2d at 451. The Earlls ask this Court to re-examine *Pourier* in light of our subsequent decisions in *Wheeler* and other cases addressing the public policy underlying UIM coverage.

[¶14.] Relying on *Pourier* and *Wheeler*, Farmers Mutual argues that the different treatment of UIM and UM coverage is properly grounded in the statutory language of SDCL 58-11-9.5, which explicitly allows UIM coverage to be "subject to the terms and conditions," while SDCL 58-11-9, governing UM coverage, does not contain such language. Farmers Mutual maintains that *Pourier* properly rejected a public policy challenge to an "owned but not insured" exclusion to UIM coverage and

the decision should be reaffirmed. Farmers Mutual contends that the statutory differences justify broader exclusions for UIM coverage, and any change to align the two coverages would need to come from the Legislature.

[¶15.]     For both UIM and UM coverage, we have stated that "[t]he public policy of this state is set forth in its statutes and cases." *Gloe I,* 2005 S.D. 29, ¶ 17, 694 N.W.2d at 244–45. In general, contracts cannot alter existing statutory laws, and stipulations in an insurance contract that conflict with an applicable statutory provision "must yield to the statute, and are invalid[.]" *Farmland Ins. v. Heitmann,* 498 N.W.2d 620, 623 (S.D. 1993) (citation omitted). We have also recognized that "[i]nsurance is a creature heavily regulated by statute[.]" *Am. Fam. Mut. Ins. Co. v. Merrill,* 454 N.W.2d 555, 559 (S.D. 1990). SDCL Chapter 58-11 governs the form and contents of insurance policies, including the statutorily mandated UM and UIM coverage in motor vehicle liability policies.

[¶16.]     South Dakota first mandated UM coverage in motor vehicle liability policies in 1966. SDCL 58-11-9 requires UM coverage in all motor vehicle liability policies issued in this state. The statute provides:

> No policy insuring against a loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state . . . *unless coverage is provided* . . . for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles[.]

SDCL 58-11-9 (emphasis added). We have long recognized that "[t]he purpose of the uninsured motorist statutes is to provide the same insurance protection to the

insured party who is injured by an [u]ninsured or unknown motorist that would have been available to him had he been injured as a result of the negligence of a motorist covered by the minimum amount of liability insurance." *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D. 1978). Furthermore, we have noted that "[t]he intent behind uninsured motorist statutes is to protect the insurance consumer, not the policy vendor." *De Smet Ins. Co. v. Gibson*, 1996 S.D. 102, ¶ 5, 552 N.W.2d 98, 99.

[¶17.]     Nine years after the Legislature mandated UM coverage, SDCL 58-11-9.4 was enacted, which similarly mandates UIM coverage in any motor vehicle liability policy issued in this state. SDCL 58-11-9.4 provides:

> No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state . . . unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy.

By requiring UIM coverage, "the legislature clearly sought to protect *insured motorists from underinsured motorists*." *Heitmann*, 498 N.W.2d at 624 (emphasis added). *See also Gloe v. Union Ins. Co. (Gloe II)*, 2005 S.D. 30, ¶ 12, 694 N.W.2d 252, 257 ("The purpose of the UIM statutory scheme is to provide protection to insured motorists against underinsured motorists.").

[¶18.]     In addition to the statutory mandate for UIM coverage, SDCL 58-11-9.5 governs the payment of UIM benefits to an insured in the event of an accident involving an underinsured driver. The statute provides:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile

accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

SDCL 58-11-9.5.

[¶19.] We have referred to SDCL 58-11-9.5 as a "difference of limits" statute used to determine the extent of a UIM insurer's liability. *Nickerson v. Am. States Ins.*, 2000 S.D. 121, ¶ 10, 616 N.W.2d 468, 471.[1] Unlike UM coverage, where no recovery is made against the at-fault uninsured driver, SDCL 58-11-9.5 permits the UIM insurer to offset its payment by the amount paid by the at-fault underinsured driver. *See Gloe II*, 2005 S.D. 30, ¶ 15, 694 N.W.2d at 258 ("[SDCL 58-11-9.5] will not permit an insured to collect UIM benefits without first deducting the amount paid by the tortfeasor's liability carrier.").

[¶20.] Standing the statutes side by side, the public policy of the Legislature for UM and UIM coverages is clear. SDCL 58-11-9 mandates UM coverage in any motor vehicle insurance policy issued for a vehicle registered in this state. The statute further requires that coverage be provided "for the protection of persons insured thereunder who are legally entitled to recover damages" for any injury or death caused by an uninsured driver. SDCL 58-11-9. SDCL 58-11-9.4 similarly

---

1. "When the amount recovered [from the at-fault driver's insurer] equals or exceeds the limits of UIM coverage, no UIM benefits are payable." *Westfield Ins. Co. v. Rowe*, 2001 S.D. 87, ¶ 8, 631 N.W.2d 175, 178. Therefore, even if coverage exists, an insured's right to recover UIM benefits "applies when the insured has uncompensated damages up to the UIM policy limits without regard to the number of policies, vehicles or the amount of premiums paid." *Nickerson*, 2000 S.D. 121, ¶ 15, 616 N.W.2d at 471. *See also Gloe II*, 2005 S.D. 30, ¶ 15, 694 N.W.2d at 257–58; *Heitmann*, 498 N.W.2d at 625.

mandates UIM coverage for any motor vehicle policy issued on a vehicle registered in this state. Additionally, SDCL 58-11-9.5 requires an insurer to "pay its own insured for uncompensated damages as its insured may recover" for death or bodily injury arising out of an automobile accident when the judgment "exceeds the policy limits thereon." The only limitation in SDCL 58-11-9.5 on the insurer's obligation to compensate an insured is the "difference of limits" language, which allows the insurer to offset its payment by the amount paid by the underinsured driver. When read together, these statutes mandate UM and UIM coverage in every motor vehicle liability insurance policy and require an insurer to pay UM and UIM benefits to any *insured* who has not fully recovered against an uninsured *or* underinsured driver. *Gloe I*, 2005 S.D. 29, ¶ 17, 694 N.W.2d at 245 (citing *Clark*, 270 N.W.2d at 29).

[¶21.] Consistent with the statutory framework, our cases have expressed that UM and UIM statutes share a common purpose: "to protect the insured party who is injured in an automobile accident by the negligence of an uninsured/underinsured motorist." *Id.* Moreover, "because of the similarity of subject and purpose of UM and UIM statutes and coverage most of the cases . . . construe UM and UIM claims, policies, and statutory language interchangeably." *Id.* at ¶ 11, 694 N.W.2d at 242 (internal citation omitted). *See also Canal Ins. Co. v. Abraham*, 1999 S.D. 90, ¶¶ 28–30, 598 N.W.2d 512, 519 (applying UIM and UM cases interchangeably in the context of UIM coverage); *Cornelius v. Nat'l Cas. Co.*, 2012 S.D. 29, ¶ 13, 813 N.W.2d 167, 171 (applying UIM and UM cases interchangeably in the context of UM coverage).

[¶22.] We extensively discussed the similar statutory purposes of UM/UIM coverage in *Gloe I*, 2005 S.D. 29, 694 N.W.2d 238. The insured in *Gloe I* sought UIM benefits under his motor vehicle liability policy for the wrongful death of his parents who were not insureds under his policy. *Id.* ¶ 1, 694 N.W.2d at 240. Nonetheless, he argued that pursuant to the language of SDCL 58-11-9.5, he was entitled to recover "uncompensated damages" as a wrongful death beneficiary "on account of bodily injury *or death arising out of an automobile accident . . . .*" *Id.* ¶ 4, 13, 694 N.W.2d at 240, 243 (quoting SDCL 58-11-9.5). The insured asserted that a policy provision limiting UIM coverage to an *insured's* bodily injury violated public policy. *Id.* ¶ 10, 694 N.W.2d at 242. *Gloe I* rejected the argument that SDCL 58-11-9.5 evinced a legislative intent to require UIM coverage in policies where no UM coverage would be required. *Id.* ¶ 11 n.7, 694 N.W.2d at 242 n.7. "Even though the UM and UIM statutes were passed nine years apart, we do not believe the slight difference in language of the statutes suggests that the legislature had different purposes and goals in enacting each provision." *Id.* We explained that "construing UM and UIM statutes separately 'would create the anomalous situation where benefits for the wrongful death of an uninsured person were not required if the motorist causing death was uninsured, but required if the motorist was underinsured.'" *Id.* ¶ 11, 694 N.W.2d at 242 (citation omitted).

[¶23.] We determined that the Legislature's purpose in enacting the UM/UIM statutes was to protect an "*insured* party who *is injured in an accident,*" not to provide coverage "for the wrongful death of one not insured under the claimant's policy." *Id.* ¶ 27, 694 N.W.2d at 249. Because the underlying purposes of UM and

UIM coverage in the statutes was for the protection of *insureds*, we upheld the policy provision limiting UIM coverage to an *insured's* bodily injury, relying on the language in SDCL 58-11-9.5 permitting insurance providers "to place conditions on underinsured motorist coverage" that are consistent with the statutory purposes of UIM coverage. *Id.* ¶¶ 15–16, 694 N.W.2d at 244.

[¶24.]    In *Pourier* we considered for the first time whether an "owned but not insured" exclusion to UIM coverage violated public policy. 2011 S.D. 47, ¶ 6, 802 N.W.2d at 449. The case involved a minor who was seriously injured in a motor vehicle accident while occupying a vehicle covered under her mother's motor vehicle policy. The minor's parents were divorced and she was an insured under both of her parents' motor vehicle policies. After receiving compensation from the at-fault driver's insurance and her mother's UIM policy, the minor sought UIM benefits under her father's policy, which covered a vehicle not involved in the accident. The insurer denied the claim based on an "owned but not insured" exclusion in its policy and the circuit court determined the exclusion was enforceable.

[¶25.]    In a 3-2 decision, this Court upheld the exclusion, relying on the "subject to the terms and conditions" language in SDCL 58-11-9.5. *Id.* ¶ 12, 802 N.W.2d at 451–52. Without considering the underlying public policy for mandatory UIM coverage, the Court also found the reasoning from other jurisdictions to be persuasive—that the exclusion prevents "insureds from purchasing insurance for one car only" and applying the UIM coverage from the insured vehicle to accidents involving uninsured or separately insured vehicles. *Id.* ¶ 7, 802 N.W.2d at 449. Drawing on this rationale, the Court deemed the exclusion reasonable as it

"protects insurers from having to 'insure against risk of an undesignated but owned vehicle, or a different or more dangerous type of vehicle of which it is unaware, unable to underwrite, and unable to charge a premium therefor.'" *Id.* ¶ 12, 802 N.W.2d at 451 (quoting *Lefler v. General Cas. Co.*, 260 F.3d 942, 945 (8th Cir. 2001)). *Pourier* also noted that requiring UIM benefits in this case "would allow [the minor] (or her parent) to increase the underinsured coverage on a vehicle . . . without purchasing additional underinsured coverage." *Id.* ¶ 12, 802 N.W.2d at 451–52.

[¶26.] Justice Meierhenry's dissent in *Pourier* argued that the "owned but not insured" exclusion was void as against the public policy stated in SDCL 58-11-9.4 and 9.5 because the "public policy proclaimed in this statute is that the insurance company 'agrees to pay its own insured for uncompensated damages.'" *Id.* ¶ 16, 802 N.W.2d at 452 (Meierhenry, J., dissenting) (citing *Gloe I*, 2005 S.D. 29, ¶ 17, 694 N.W.2d at 245). Contrary to the majority's view, the dissent reasoned that "[UIM] coverage is intended to protect the insured" and the injured minor's father had "paid premiums to cover her in the event she was injured by an underinsured driver" which was "exactly what happened[.]" *Id.* ¶ 18, 802 N.W.2d at 453. The dissent therefore concluded that the exclusion should not deny the insured the protection intended by SDCL 58-11-9.4 and 9.5. *Id.*

[¶27.] One year after *Pourier*, this Court held in *Wheeler* that an "owned but not insured" exclusion was void as against public policy in the context of UM coverage. 2012 S.D. 83, ¶ 23, 824 N.W.2d at 109. Notably, *Wheeler* involved similar facts to *Pourier*, except that the at-fault driver was uninsured rather than

underinsured. Distinguishing the invalidity of the "owned but not insured" exclusion in the context of UM coverage, *Wheeler* reasoned that the Legislature's inclusion of the "subject to the terms and conditions" language for UIM coverage in SDCL 58-11-9.5 and the absence of such language in SDCL 58-11-9, indicated a legislative intent to allow insurers to impose limitations on UIM coverage but not on UM coverage. *Id.* Limiting our prior statements in *Gloe I* that the UM and UIM statutes should be construed together, *Wheeler* concluded that the "two statutes are distinct, and that their language and case law cannot be construed interchangeably *in this case.*" *Id.* at ¶ 20 (emphasis added).

[¶28.] Justice Zinter, in his concurring opinion, encouraged the South Dakota Legislature to provide clarity regarding the state's policy on UM and UIM coverage. *Id.* ¶ 35, 824 N.W.2d at 112. Recognizing the inconsistent treatment of UM and UIM coverage in *Pourier* and *Wheeler*, he questioned whether the "subject to the terms and conditions" language in SDCL 58-11-9.5 was truly intended by the Legislature to create different outcomes for the same exclusions as between UM and UIM coverage. *Id.* ¶ 31, 824 N.W.2d at 110. Justice Zinter further raised concerns about why, despite the absence of similar "subject to the terms and conditions" language in the UM statute, the Court has upheld certain exclusions for UM coverage. *Id.* ¶ 33, 824 N.W.2d at 111. *See Gibson*, 552 N.W.2d at 100 (allowing a "resident family member" exclusion to UM coverage); and *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 277 (S.D. 1994) (allowing a "premises" exclusion to UM coverage)).

[¶29.] Later, in *Streff v. State Farm*, we addressed a different challenge to a UIM coverage exclusion. 2017 S.D. 83, 905 N.W.2d 319. *Streff* applied the public policy underlying the UIM statutes to invalidate a government-owned vehicle exclusion in an umbrella insurance policy providing UIM coverage. *Id.* ¶ 9, 905 N.W.2d at 322. While the outcome in *Streff* is not instructive here, the Court again reiterated that "SDCL 58-11-9.4 manifests South Dakota's public policy as expressed by the Legislature to give *insureds* the opportunity for full compensation for injuries inflicted by financially irresponsible motorists." *Id.* ¶ 14, 905 N.W.2d at 323 (emphasis added).

[¶30.] Subsequently in *Larimer*, we determined that an "owned but not insured" exclusion to UIM coverage was ambiguous and did not apply to exclude coverage for an insured riding a moped that was not listed as a covered vehicle under the policy. 2019 S.D. 21, ¶ 13, 926 N.W.2d at 476–77. Because we resolved the appeal in favor of the insured, we did not address the insured's cross-appeal challenging the validity of the "owned but not insured" exclusion as against public policy. In a concurring opinion, Justice Severson reiterated his view that "[t]he Legislature *mandates* that an insurance company 'agree[ ] to pay *its own insured* for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident[.]'" *Id.* ¶ 19, 926 N.W.2d at 477 (quoting SDCL 58-11-9.5).

[¶31.] Given our prior expression of the similarities of the underlying public policy for UM and UIM coverage, and the seeming inconsistency in considering the policy underlying UM/UIM coverage in *Pourier* and *Wheeler,* we think it is

appropriate to re-visit our decision in *Pourier*. Since we do not perceive any basis to limit or distinguish *Pourier* from the case before us, we consider the continued efficacy of *Pourier* under the well-established doctrine of stare decisis.

### i.   Stare decisis.

[¶32.]    "The doctrine of stare decisis exists as a prudential means of promoting stability in the law by adhering to the holdings in our prior decisions and regarding them as precedential." *In re Noem*, 2024 S.D. 11, ¶ 48, 3 N.W.3d 465, 479. "However, when we are convinced that a decision was wrongly decided, we remain free to correct it." *Id.* "In these instances, stare decisis becomes less efficacious . . . 'and it is the manifest policy of our courts to hold the doctrine of stare decisis subordinate to legal reason and justice, and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error.'" *Id.* (quoting *Brekke v. Crew*, 43 S.D. 106, 178 N.W. 146, 154 (1920)).

[¶33.]    The United States Supreme Court outlined five factors that courts should consider when deciding whether to depart from precedent. *Janus v. Am. Fed'n of State*, 585 U.S. 878, 917, 138 S. Ct. 2448, 2478–79, 201 L. Ed. 2d 924 (2018)). We recently applied these factors in *Noem*, 2024 S.D. 11, ¶ 50, 3 N.W.3d at 480, and they guide our analysis in the present case. These five factors include: "(1) the quality of [the] prior decision's reasoning; (2) the workability of the prior rule established by its precedent; (3) the consistency of the prior decision with other related decisions; (4) subsequent developments since the erroneous decision; and (5) the extent of the reliance on the earlier decision." *Id.* (citation omitted).

### 1.      *Quality of prior decision.*

[¶34.]      We have stated that South Dakota public policy "is set forth in its statutes and cases." *Gloe I*, 2005 S.D. 29, ¶ 17, 694 N.W.2d at 244–45.  Yet there was little consideration in *Pourier* concerning the defined public policy to provide UIM benefits for an insured who has not been fully compensated for their injuries and the overarching view that UIM coverage follows the insured, not the vehicle.  Instead, our reasoning was based primarily upon a broad interpretation of the "subject to the terms and conditions" language in SDCL 58-11-9.5.

[¶35.]      While the *Pourier* decision correctly noted that "[n]othing in SDCL 58-11-9.5 requires an insurer to pay underinsured motorist benefits in every circumstance," this reasoning is incomplete.  *Pourier*, 2011 S.D. 47, ¶ 12, 802 N.W.2d at 451.  As recognized by this Court in *Gloe I*, "the 'subject to the terms and conditions' language of SDCL 58-11-9.5 was not intended to permit any restriction an insurer may wish to create.  It was only intended to allow limitations on coverage to the extent that they do not violate the public policy expressed in the statutes." *Gloe I*, 2005 S.D. 29, ¶ 16, 694 N.W.2d at 244.

[¶36.]      *Pourier* overlooked the public policy underlying UIM coverage.  In particular, *Pourier* did not directly address whether the exclusion at issue was inconsistent with our stated public policy that both UM and UIM coverages are intended to protect the insured who is injured in an automobile accident by the negligence of an uninsured/underinsured driver.  Moreover, although *Pourier* acknowledged that UIM coverage "*follows the insured rather than the vehicle*[,]" it

did not further reconcile this principle with its holding. *Pourier*, 2011 S.D. 47, ¶ 6, 802 N.W.2d at 449 (emphasis added).

[¶37.]     In a footnote responding to the dissent, the majority in *Pourier* quoted the last sentence of SDCL 58-11-9.5 and reasoned that the "owned but not insured" exclusion did not violate public policy "because the statute contemplates that mandated UIM coverage is limited to the *coverage* purchased for the *insured vehicle*[.]" *Id.* ¶ 12 n.4, 802 N.W.2d at 451 n.4 (emphasis in original).  The Court's analysis misread the "difference of limits" language that simply requires the UIM recovery to be netted against the amount paid by the liability insurer of the at fault underinsured driver.  *See* SDCL 58-11-9.5 (stating in part that "[c]overage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.").  When read as a whole, SDCL 58-11-9.5 requires an insurer to pay its insured UIM benefits "for uncompensated damages" arising from the accident, up to the policy limits, less the difference of limits.

[¶38.]     *Pourier's* reasoning in this footnote also improperly tied the mandatory UIM coverage to the insured vehicle rather than the insured person.  But this is contrary to our case law, as well as the mandate in SDCL 58-11-9.4 for UIM coverage in every motor vehicle liability policy and the requirement in SDCL 58-11-9.5 for an insurance company to pay its insured for uncompensated damages when the insured is injured by an underinsured driver.  UM/UIM coverage is mandated for the protection of insureds.  *See Gloe I,* 2005 S.D. 29, ¶ 17, 694 N.W.2d at 245 ("[T]he purpose of UM/UIM coverage is to protect the *insured* party *who is injured*

in an automobile accident by the negligence of an uninsured/underinsured motorist[.]"). We have consistently recognized that UIM coverage follows the insured rather than the vehicle. *See Pourier*, 2011 S.D. 47, ¶ 6, 802 N.W.2d at 449 ("[U]nderinsured motorist coverage is generally portable: it follows the insured rather than the vehicle."); and *Terra-Tek*, 2024 S.D. 49, ¶ 19, 11 N.W.3d at 102 (quoting SDCL 58-11-9.5) (noting that restricting UIM coverage to injuries sustained only while occupying a vehicle covered under the policy "would also conflict with SDCL 58-11-9.5, which states that a UIM carrier 'agrees to pay its own insured for uncompensated damages as its insured may recover *on account of bodily injury or death*[.]'"). *See also* 7 Blashfield Automobile Law and Practice § 316:29 ("Uninsured and underinsured motorist coverage is considered to be personal to the insured and not dependent on the vehicle the insured was using when he or she was injured. This rule has also been applied to insured pedestrians.").

[¶39.] In emphasizing the "subject to the terms and conditions" language in SDCL 58-11-9.5, *Pourier* also failed to address the impact of SDCL 58-11-10 and the changes made to that statute in 2010. SDCL 58-11-10 was enacted alongside SDCL 58-11-9 in 1966 and originally provided that "[a] policy may contain additional lawful provisions not inconsistent with this title, subject to the director's approval." Before our decision in *Pourier*, the Legislature modified the statute and it currently provides that "[a] policy may contain additional lawful provisions, *including reasonable policy exclusions*, not inconsistent with this title, subject to the director's approval." SDCL 58-11-10 (emphasis added).

[¶40.]     Our cases demonstrate that although UM and UIM coverage is mandated, it may be limited when reasonable and consistent with the rest of the statutory scheme. *See Gibson*, 1996 S.D. 102, ¶ 10, 552 N.W.2d at 101 ("[SDCL 32-35-70] permits such exclusions in this circumstance as an exception to mandatory automobile insurance coverage."). This is consistent with SDCL 58-11-10, which we have cited to state that "[o]nly policy provisions not inconsistent with chapter 58 may be included in insurance policies." *Heitmann*, 498 N.W.2d at 624.[2] After all, the purpose of Chapter 58-11 was not to reduce or weaken the public policy that the Legislature intended for insured individuals through mandatory UM/UIM coverage. *See Helmbolt v. LeMars Mut. Ins. Co., Inc.*, 404 N.W.2d 55, 59 (S.D. 1987).

[¶41.]     The notion that the "subject to the terms and conditions" language in SDCL 58-11-9.5 demonstrates an intention to create a different public policy for UIM coverage is unsustainable given the clear and consistent statutory mandates for both UM and UIM coverages. Further, given the application of SDCL 58-11-10 to both types of coverage, the "subject to the terms and conditions" language in SDCL 58-11-9.5 does not justify treating UIM coverage differently from UM coverage. By isolating SDCL 58-11-9.5 from the rest of the statutory framework, including SDCL 58-11-9, SDCL 58-11-9.4, and SDCL 58-11-10, the *Pourier* decision failed to harmonize these provisions, leading to a fragmented application of the law.

---

2.     Properly reading SDCL 58-11-10 as applicable to both UM and UIM coverage also explains the propriety of our prior decisions, as noted in Justice Zinter's concurrence in *Wheeler*, which applied exclusions to both types of coverage. 2012 S.D. 83, ¶ 33, 824 N.W.2d at 111 (Zinter, J., concurring).

###### 2. *Workability.*

[¶42.] The unworkability of *Pourier* became evident a year later in *Wheeler*. While *Pourier* upheld an "owned but not insured" exclusion for UIM coverage, *Wheeler* invalidated an "owned but not insured" exclusion for UM coverage. *See Wheeler*, 2012 S.D. 83, ¶¶ 17–19, 824 N.W.2d at 107–08. The inconsistency between the two cases is particularly striking given the nearly identical factual circumstances—both involved minors who were insured under their divorced parents' policies and injured while driving an owned vehicle not covered by one of the policies.

[¶43.] Justice Zinter's concurrence in *Wheeler* expressed concerns about the quality of *Pourier's* reasoning and whether the public policy underlying UM/UIM coverage—to protect insured individuals from uncompensated damages—was adequately considered. *Wheeler* did not address the underlying public policy in SDCL 58-11-9 to protect insureds injured by an uninsured motorist, nor did the decision address how those public policy considerations are distinct from UIM coverage. Instead, *Wheeler* attempted to reconcile the different treatment of UIM coverage a year earlier in *Pourier*, by distinguishing the "subject to the terms and conditions" language in SDCL 58-11-9.5 from the language in SDCL 58-11-9. However, such an anomalous situation was what the Court was trying to avoid in *Gloe I* when it stated that "we construe our UM and UIM statutes together. We also apply the case law considering UM and UIM coverage interchangeably." *Gloe I*, 2005 S.D. 29, ¶ 11, 694 N.W.2d at 242.

[¶44.]        By emphasizing the "subject to the terms and conditions" language in SDCL 58-11-9.5 when determining the validity of a UIM or UM coverage exclusion, *Pourier* shifted the focus of the inquiry to what is *not* against public policy, rather than addressing the public policy the Legislature intended to promote.  *See e.g.*, *Union Ins. Co. v. Scholz*, 473 F. Supp. 3d 978, 987 (D.S.D. 2020) ("It is not against public policy in South Dakota to place limits on underinsured motorist coverage.").  *Pourier* offers no clear boundary for what exclusions are consistent or inconsistent with the public policy of South Dakota.  This approach has created uncertainty in subsequent cases, as this Court has either limited the decision or avoided applying it altogether.

                    3.      *Consistency.*

[¶45.]        In addition to the inconsistency with *Wheeler*, the reasoning in *Pourier* is inconsistent with both prior and subsequent decisions involving UM and UIM coverage.  For instance, *Gloe I* reinforced the principle that UIM coverage is personal to the *insured*, and designed to protect against bodily injury or death suffered by the *insured*.  2005 S.D. 29, ¶ 14, 694 N.W.2d at 243–44.  In our recent decision in *Terra-Tek*, we reaffirmed that "underinsured motorist coverage is generally portable: it follows the insured rather than the vehicle."  2024 S.D. 49, ¶ 19, 11 N.W.3d at 102 (citation omitted).  *See also Streff*, 2017 S.D. 83, ¶ 16, 905 N.W.2d at 324.  In contrast, *Pourier* upheld an "owned but not insured" exclusion, effectively allowing the insurer to exclude UIM coverage based on the status of the vehicle involved, despite the general understanding that UIM coverage follows the insured, not the vehicle.  By allowing the "subject to the terms and conditions"

language in SDCL 58-11-9.5 to serve as a basis for denying coverage altogether, the *Pourier* decision undermines the statute's intended function— to limit the extent of recovery—and permits it to eclipse the mandatory UIM coverage required by SDCL 58-11-9.4, distorting the relationship between the two statutes.

4.     *Subsequent developments.*

[¶46.]     Since *Pourier*, subsequent cases have either avoided applying its reasoning or limited its scope. *See Wheeler*, 2012 S.D. 83, ¶ 17, 824 N.W.2d at 107 (attempting to distinguish *Pourier* after holding that the "owned but not insured" exclusion in a motor vehicle policy was void in the context of uninsured motorist statute); *Larimer*, 2019 S.D. 21, ¶ 13, 926 N.W.2d at 476–77 ("Having concluded that the language of the policy is ambiguous and that underinsured motorist coverage applied, we need not address whether the 'owned but not insured' exclusion from underinsured motorist coverage violates public policy."); *Streff*, 2017 S.D. 83, ¶ 9, 905 N.W.2d at 322 ("[I]f our public policy dictates that an insurer cannot exclude UIM coverage in a 'motor vehicle liability policy' for accidents involving government vehicles [then] that same public policy appl[ies] when, under SDCL 58-11-9.4, the insured requests additional UIM coverage through a supplemental umbrella policy[.]").

5.     *Reliance.*

[¶47.]     Lastly, the parties have not addressed any specific concerns about undue reliance on our decision in *Pourier*. However, a review of our decisions since *Pourier* demonstrates that *Pourier* has given rise to increasing uncertainty and inconsistency. It is possible that insurers may have priced their risks and

structured their UIM policies based on our ruling in *Pourier*, but Farmers Mutual has not made that argument and there is no claim that reversing *Pourier* will significantly impact their underwriting.[3] To the contrary, the Earlls have argued that any economic impact on insurers is minimal, as the record demonstrates that six months of UIM coverage costs $11.00 per vehicle listed on the declarations page of their Farmers Mutual policy. Finally, the goal of the statutes is to protect insured individuals, and any undue reliance on an erroneous interpretation must be balanced against the broader public interest.

## Conclusion

[¶48.] While we acknowledge *Pourier's* careful reasoning by a sharply divided Court, our review of the public policy of this State for UM/UIM coverage and the *Janus* factors lead us to conclude that *Pourier* is an outlier in this Court's decisions. For the reasons discussed above, we reverse our decision in *Pourier* and we hold that the "owned but not insured" exclusion to UIM coverage in motor vehicle policies—when used to deny coverage to an insured individual under circumstances like those in this case—violates South Dakota public policy.

[¶49.] We reverse the circuit court's ruling granting summary judgment in favor of Farmers Mutual and remand for the circuit court to enter summary judgment in favor of the Earlls.

[¶50.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.

---

3. The Earlls' Farmers Mutual policy includes an identical "owned but not insured" exclusion for UM coverage, despite our decision in *Wheeler* that such exclusions are invalid in the context of UM coverage. *Wheeler*, 2012 S.D. 83, ¶ 23, 824 N.W.2d at 109.